**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **TROY SHANNON HARLOW** | § | |
| | § | |
| **MARK STEPHEN ESTES** | § | |
| | § | |
| **KIMBERLY PORTER FERWELL,** | § | |
| | § | |
| **BEATRIZ VILLEGAS-RODRIGUEZ** | § | |
| **and** | § | **ADVERSARY NO. 20-07028** |
| **RODOLFO RODRIGUEZ,** | § | |
| **on behalf of themselves and all** | § | **DISTRICT COURT NO. 7:24-cv-00424** |
| **others similarly-situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **WELLS FARGO BANK, N.A.** | § | |
| | § | |
| **Defendant.** | § | |

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS AND CLASS
REPRESENTATIVE SERVICE AWARDS**

## TABLE OF CONTENTS

I.      Introduction......................................................................................................................1

II.     Procedural Background.....................................................................................................3

III.    Argument and Authorities................................................................................................7

    A.  A 1/3 percentage-of-recovery attorney fee award is appropriate and reasonable
       compensation for Class Counsel in this case ...........................................................7

      1.  The percentage-of-recovery approach is the preferred approach to determine
         attorney's fees in the Fourth Circuit ....................................................................7

      2.  Class Counsel's request 1/3 fee is reasonable and comparable to other awards in
         the Fourth Circuit ...............................................................................................10

      3.  Class Counsel's request 1/3 fee should be awarded because they have met the
         standard for awarding fees as a percentage of recovery in the Fourth Circuit ....11

           1)  The settlement Class Counsel negotiated achieves an outstanding and
              extremely valuable result for the Class. .............................................12

           2)  Class Members may object to the fees requested by Class Counsel....13

           3)  The quality, skill, and efficiency of the attorneys involved................13

           4)  This case was complex and has lasted over 4 years.............................14

           5)  Class Counsel took significant risks and overcame major obstacles to
              prosecute and settle the class members' claims in this case ...............15

           6)  The requested fee of 33% of the recovery is reasonable in light of fees
              awarded in comparable cases...............................................................17

           7)  The fee award sought is supported by public policy............................17

      4.  Class Counsel's requested fee is supported by a lodestar cross-check...............18

    B.  Class Counsel is entitled to reimbursement of their reasonable expenses in the
       amount of $62,296.36 ...........................................................................................23

      5.  The Class Representatives have earned their service awards, which are
         reasonable and appropriate ..................................................................................24

Troy Shannon Harlow, Mark Stephen Estes, Kimberly Porter Fewell, Beatriz Villegas-Rodriguez and Rodolfo Rodriguez, (together, "Plaintiffs" or "Named Plaintiffs"), individually and on behalf of all other similarly situated individuals, with the consent of Defendant Wells Fargo Bank, N.A. ("Defendant"), move for an order awarding attorneys' fees, expenses, and class representative service awards. For the reasons listed below, the Court should award the requested attorneys' fees, expenses, and class representative service awards.[1]

## I.    INTRODUCTION

Plaintiffs allege that in early March of 2020, at the beginning of the pandemic, Wells Fargo made a decision to provide mortgage forbearances to certain customers in Chapter 13 bankruptcies who had not explicitly requested a forbearance. Plaintiffs allege that the CARES Act required an explicit request for forbearance relief by the mortgagor. Plaintiffs further allege that, for certain Chapter 13 bankruptcy debtors whose loans Wells Fargo placed into forbearance without the borrower's request, Wells Fargo filed notices of forbearance in the individuals' Chapter 13 bankruptcy cases stating incorrectly that the debtors had requested forbearance or that Wells Fargo had provided the debtors with a temporary suspension of their mortgage payments (implying debtors' knowledge and acceptance of the forbearances).

Plaintiffs allege that Wells Fargo's placement of Chapter 13 bankruptcy debtors' mortgage loans into forbearance was inherently harmful to the consumer debtors. Plaintiffs also allege that Wells Fargo's forbearances were tantamount to an involuntary modification of the Chapter 13 debtors' mortgage loans, which interfered with the Chapter 13 bankruptcy process in a variety of ways.

---

[1] Plaintiffs attach to this memorandum the declarations of Theodore O. Bartholow, III (Exhibit 1), Karen Kellett (Exhibit 2), Malissa Giles (Exhibit 3), Abelardo Limon (Exhibit 4), and John Rao (Exhibit 5) in support of both Plaintiffs' fee motion and their soon to-be-filed motion for final approval of the class settlement.

The Plaintiffs sued Wells Fargo on June 26, 2020, to put an end to and provide remedies for the harms created by its practice of placing debtors in Chapter 13 bankruptcy proceedings into unwanted and unrequested mortgage forbearances. [2] *See* Bartholow Decl., ¶ 15-20.

Wells Fargo argued that the vast majority of debtors who received a mortgage forbearance requested or wanted it and used it, and fought this case for four years through extensive motion practice and discovery in both federal bankruptcy court and federal district court.

In the proposed settlement that Class Counsel ultimately negotiated in this case, Wells Fargo will pay $15,000,000.00 into a non-reversionary settlement fund for payment for the approximately 7,841 mortgage loan accounts of the Settlement Class Members, payment of settlement administration costs, service awards to the Class Representatives in an amount of up to $12,500 each, Class Counsel's reasonable and actual expenses, and Class Counsels' attorneys' fees in an amount up to 33% of the Settlement Fund.  As stated in more detail in Plaintiffs' Motion for Preliminary Approval, automatic cash payments in the amount of $2,500.00 per loan will go to Subclass 1 members and automatic cash payments in the amount of $500.00 per loan will go to members of Subclass 2, and the remaining balance of the settlement fund after these payments and after the costs of administration, litigation expenses, and attorneys' fees,  will be deposited into a Claims Fund, from which Class Members can assert claims for damages proximately caused by Wells Fargo placing their loan into forbearance, which were not otherwise compensated by the automatic payments.  These claims will be administered by UNC Chapel Hill Law Professor Kara Bruce, as claims ombudsman.  Any funds remaining after this process shall be paid out in a second automatic distribution, in equal amounts, on a per loan basis to every Class Member who cashed their initial automatic settlement payment check.

---

[2] *See* Harlow, et. al. v. Wells Fargo, AP No. 20-07028 (Bank WDVA)("*Harlow*"), Dkt. No. 49.

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND
NON-TAXABLE COSTS AND CLASS REPRESENATIVE SERVICE AWARDS**      **PAGE 2**

These achievements are the product of Class Counsel's substantial efforts over the course of four-plus years of vigorously contested, often contentious litigation in both bankruptcy and district court, extensive discovery, and multiple days of hard-fought arms-length mediated negotiations.

Indeed, Class Counsel's discovery in this case confirmed that Wells Fargo engaged in the behavior alleged by Plaintiffs, which ultimately facilitated settlement of this case.    Without Plaintiffs' and Class Counsel's prosecution and settlement of this case, it is possible that Wells Fargo's unauthorized mortgage forbearances would have resulted in foreclosures of mortgage loans and disruption, or even dismissal of borrowers' Chapter 13 cases, and other unnecessary stresses on the regular functioning of the nation's Chapter 13 bankruptcy system, and that the Plaintiffs would continue to suffer damages as a result of same.

## II.    PROCEDURAL BACKGROUND

In the spring of 2020, Ms. Giles discovered that Wells Fargo was placing her clients into unwanted and unrequested forbearances, and filing notices in the bankruptcy court that falsely asserted the debtors had asked for the forbearances.  She joined with the other Class Counsel and all firms extensively investigated Wells Fargo's forbearance practices throughout the country. Bartholow Decl., ¶ 15-18; Giles Decl., ¶ 13.  Class Counsel vetted potential candidates to serve as class representatives in this case, prepared the initial *Harlow* class action complaint and filed it on June 26, 2020.  *Harlow*, Dkt. No. 1; Bartholow Decl., ¶ 19-20.

On August 6, 2020, Plaintiffs filed a motion for a preliminary injunction, and after extensive negotiations, Wells Fargo consented to entry of an order by the bankruptcy court restricting filings Wells Fargo could make in bankruptcy courts regarding mortgage forbearances

and limiting the circumstances under which Wells Fargo could file motions for relief from stay prior to January 1, 2021. *Harlow*, Dkt. Nos. 26, 40; Bartholow Decl., ¶ 25-26.

From August through early December of 2020, Plaintiffs' counsel and counsel for Wells Fargo repeatedly engaged in extensive good faith informed negotiations regarding the scope and nature of the discovery needed for trial, and for a possible settlement. *Id.* at ¶ 27.

Plaintiffs filed their second amended complaint on November 16, 2020. *Harlow*, Dkt. No. 49, which Wells Fargo moved to dismiss. *Id.* at Dkt. Nos. 59 and 60. Wells Fargo also moved for withdrawal of the reference, which Plaintiffs opposed.[3] Bartholow Decl., ¶ 30. On January 6, 2021, the District Court for the Western District of Virginia withdrew the reference and consolidated *Harlow* with *Forsburg*[4], which was pending at that time in the United States District Court for the Western District of Virginia.[5] Bartholow Decl., ¶ 34-35.

At the end of 2020, in the Northern District of California, the District Court had ordered mediation in later-filed, similar non-bankruptcy forbearance class actions against Wells Fargo ("*Delpapa*"), at which point counsel for the California plaintiffs and counsel for the consolidated *Harlow/Forsburg* plaintiffs joined forces, hired experts, engaged in extensive informal discovery, and ultimately mediated over three separate days in late summer of 2021. *Id.* at ¶ 32, 38-46. At Wells Fargo's request, the *Harlow/Forsburg* plaintiffs also agreed to a litigation stay during this process. *Id* at ¶ 40-42.[6] Our Harlow team carefully considered and researched the implications

---

[3] *See* Harlow, et. al v. Wells Fargo & Co., Case No. 7:20-mc-00030-MFU (VAWD), Dkt. Nos. 1, 4, 5, 10.

[4] This is a lawsuit filed by Plaintiffs' counsel on behalf of a nationwide class of non-bankruptcy mortgagors, alleging that Wells Fargo placed non-debtor borrowers into unrequested and unwanted forbearances in violation of numerous laws. Forsburg v. Wells Fargo & Co. et al., Case No. 5:20cv-00046-MFU, WDVA ("*Forsburg*").

[5] *See* Harlow, et. al v. Wells Fargo & Co., Case No. 7:20-mc-00030-MFU (VAWD), Dkt. Nos. 11, 12.

[6] *See Forsburg,* Dkt. Nos. 90, 91, 92, 94, 95.

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND**
**NON-TAXABLE COSTS AND CLASS REPRESENATIVE SERVICE AWARDS**          **PAGE 4**

of this stay in light of the potential impacts of this case on class members' Chapter 13 bankruptcy cases before consenting to the litigation stay.

The *Harlow* Plaintiffs served formal discovery on Wells Fargo in January of 2021. Bartholow Decl., ¶ 38.  In addition, as part of the extensive and hard-fought negotiations regarding the pre-mediation informal discovery for the 2021 mediation, Wells Fargo agreed to provide Plaintiffs with extensive documentation and account-level data regarding the *Harlow* Plaintiffs' bankruptcy claims, as well as substantial documentation and information regarding Wells Fargo's COVID-19 forbearance practices in general.  *Id.* at ¶ 43-44.

Despite extensive informal discovery, expert assistance, preparation, and three days of mediation in the summer of 2021, the mediation reached an impasse, and the litigation continued. *Id.* at ¶ 46.

The *Forsburg/Harlow* parties then filed extensive briefing in the district court on Defendants' motion to dismiss the *Harlow* Plaintiffs' second amended complaint, and Plaintiffs' motion to transfer the consolidated cases to the Northern District of California, both before and after the December 16, 2021, hearing on those motions.  *Id.* at ¶¶ 48-49. [7]

On March 30, 2022, the district court denied the motion to transfer.  However, Wells Fargo subsequently consented to transfer <u>Forsburg</u> to the North District of California, where it was consolidated with 5 other non-bankruptcy forbearance cases pending there.  On June 21, 2022, the district court granted Wells Fargo's motion to dismiss the *Harlow* plaintiffs' non-bankruptcy claims, formally de-consolidated *Harlow* and *Forsburg* and referred *Harlow* back to the bankruptcy court for a ruling on Wells Fargo's motion to dismiss Plaintiffs' remaining bankruptcy claims. Bartholow Decl., ¶ 50-51.  *See* Harlow, et al. v. Wells Fargo & Co., et al., Case No. 7:22-

---

[7] *See* Harlow, et al.  v. Wells Fargo, Case No. 7:22-cv-00267-MFU (WDVA).  (*Harlow*) Dkt. Nos. 3, 4, 5,6, 7

cv-00267-MFU (WDVA), Dkt. Nos. 12, 13.

After additional briefing in the Bankruptcy Court and oral argument, the Bankruptcy Court granted in part and denied in part Wells Fargo's motion to dismiss. *Harlow,* Dkt. Nos. 73 – 77. Bartholow Decl., ¶ 52-53.   *See Harlow, et al. v. Wells Fargo & Co., et al.*, 2022 WL 17586716 (Bankr. W.D. Va. Dec. 12, 2022).

The Parties engaged in additional discovery, including voluminous document and data production from Wells Fargo (and its review), as well as Plaintiffs taking the depositions of four Wells Fargo employees.  Bartholow Decl., ¶ 54, 57-58, 60.  The parties agreed to mediate the case again, and after months of preparation, the parties mediated this case with David Geronemus of JAMS in New York City on November 30, 2023, where the parties agreed in principle to a settlement of this case.  *Id.* at ¶ 60-62. The parties continued to extensively negotiate a term sheet and ultimately the Settlement Agreement, which the parties signed on March 26, 2024.  Bartholow Decl., ¶ 63.

The Plaintiffs filed their Amended Motion for Preliminary Approval of the settlement in Bankruptcy Court on April 8, 2024. *Harlow,* Dkt. No. 123. The Court heard Plaintiffs' counsel's presentation in support of Plaintiffs' unopposed amended motion for preliminary approval of the settlement on May 22, 2024, and subsequently entered the order preliminarily approving the settlement and appointing the undersigned as Class Counsel the same day.  *Harlow*, Dkt. No. 126. Epiq Systems, Inc., the Settlement Administrator, was required to mail long form notices to Class Members on July 11, 2024, emailed the same information to all class members for which it had email addresses.  Epiq also set up a website where class members can obtain information and submit claim forms. [8]

---

[8] *See* https://www.wellsfargobankruptcyforbearanceclass.com.

## III.    ARGUMENT AND AUTHORITIES

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  There are two main methods for calculating the reasonableness of attorneys' fees – the lodestar method and the percentage of recovery method.  *McAdams v. Robinson*, 26 F. 4th 149, 162 (4th Cir. 2022).  A district court may choose the method it deems appropriate based on its judgment and the facts of the case.  *Id.*

**A.    A 1/3 percentage-of-recovery attorney fee award is appropriate and reasonable compensation for Class Counsel in this case.**

**1.    The percentage-of-recovery approach "is the preferred approach to determine attorney's fees" in the Fourth Circuit.**

In the Fourth Circuit, the percentage-of-recovery approach "is the preferred approach to determine attorney's fees."  *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 568 (D. S.C. 2015)(citing cases). *Jones v. Dominion Resources Services, Inc.*, 601 F.Supp 756, 758-759 (S.D. W. Va.  2009)("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases.");  *Durm v. Am. Honda Fin. Corp.,* WDQ-13-223, 2015 U.S. Dist. LEXIS 150425, 2015 WL 6756040, at *6 (D. Md. Nov. 4, 2015) (district courts in Fourth Circuit use the percentage of recovery method in common fund cases).  *See also* Manual for Complex Litigation*,* §14.121 at 187 (4th ed. 2011)("the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases").[9]  The approved settlement in a comparable bankruptcy class action filed in the WDNC in

---

[9] The Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co.*, 444 U.S. 472, 478 (1980); *United States v. Tobias*, 935 F.2d 666, 667 (4th Cir. 1991)(explaining equitable basis of the "common fund" doctrine).  "It is also viewed as the preferable method in cases, such as this one, where the Plaintiff agreed to pay counsel on a contingency fee basis."  *In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031*

*Cotton* authorized a percentage of recovery fee awarded of 33% of the common fund in the amount of $13,460,000. *Cotton et al. v. Wells Fargo Bank, N.A., et al.,* No. 3:18-cv-00499-RJC, in the United States District Court for the Western District of North Carolina, Docket No. 23.

Under this method, Class Counsel's fees are calculated as a percentage of the class recovery "as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. at 478 (citing a line of decisions dating to *Trustees v. Greenough*, 105 U.S. 527 (1882)); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)("[T]he calculation of attorney's fees under the 'common fund doctrine[…]' is based on a percentage of the fund *bestowed on* the class[.]")(emphasis added). Thus, it is "appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class[.]" *Payne v. Sprint Commc'ns Co. L.P.*, No. 11- 3434, 2012 WL 13006270, at *2 (D. Md. Nov. 30, 2012)(citing *Boeing Co.,* 444 U.S. at 479).

The percentage-of-recovery method "better aligns the interests of Class Counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 462 (S.D. W. Va. 2010). Under this approach, plaintiffs' counsel have a strong incentive to obtain the maximum possible recovery for the class in the shortest time possible under the circumstances, because it removes the incentive present under the lodestar method for Class Counsel to over-litigate or draw out cases in an effort to increase the number of hours used to calculate their fees. *See Teague v. Bakker*, 213 F. Supp. 2d 571, 584 (W.D.N.C. 2002)("[A]n award of attorneys' fees from a common fund depends on whether the attorneys' specific services benefited the fund—whether they tended to create, increase, protect or preserve the fund."). The percentage-of-recovery approach also

---

*Tax Deferred Exch. Litig.*, No. 3:09-cv-00054, 2012 WL 5430841, at *2 (D. S.C. Nov. 7, 2012). *See* Bartholow Decl. ¶ 4.

eliminates the burden on the court to engage in a detailed review and calculation of attorneys' hours and rates. *Kruger v. Novant Health*, No. 1:14cv208, 2016 U.S. Dist. LEXIS 193107, 2016 WL 6769066, *4 (M.D.N.C. Sept. 29, 2016).

The Fourth Circuit in *Pellegrin v. Nat'l Union Fire Ins*. (*In re Abrams & Abrams, P.A.*), 605 F.3d 238 (4ᵗʰ Cir. 2010), stressed the importance of honoring the contingency fee of attorneys who take on difficult litigation such as this, because "contingency fees are an acknowledged feature of our legal landscape, approved by legislative and judicial bodies alike that help secure for the impecunious access both to counsel and to court." *Id*. at 245 (quoting *Wells v. Sullivan*, 907 F.2d 367, 372 (2d Cir. 1990)("[A]ccepting reasonable contingency agreements ... increases the likelihood that a claimant can find an attorney sufficiently committed and skilled to litigate successfully.")).[10]

> Access to the courts would be difficult to achieve without compensating attorneys for that risk. … In addition, it may be necessary to provide a greater return than an hourly fee offers to induce lawyers to take on representation for which they might never be paid, and it makes sense to arrange these fees as a percentage of any recovery. "[M]any attorneys are unwilling to accept the risk of nonpayment without a guaranteed contingency percentage of the recovery." In other words, plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever.

*Id*. at 246 (citations omitted).

In stressing the incentives, which are also applicable when class attorneys receive a percentage of a common fund, the Fourth Circuit also noted that an attorney compensated on a contingency basis "has a strong economic motivation to achieve results for his client, precisely

---

[10] Although *Abrams* was not a class action seeking fees from a common fund, it is often cited in percent-of-recovery class action cases for its discussion of contingency fees. *Phillips v. Triad Guaranty Inc.*, 1:09cv71, 2016 U.S. Dist. LEXIS 60950, 2016 WL 2636289, at *3 (M.D.N.C. May 9, 2016) (citing *Abrams*). *See, e.g., Abrams*, 605 F.3d at 244.

because of the risk accepted." *Id*. at 246 (citing *Kirchoff v. Flynn,* 786 F.2d 320, 325 (7th Cir.1986)("[t]he contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains.")). A contingency fee "automatically handles compensation for the uncertainty of litigation" because it "rewards exceptional success, and penalizes failure." *Kirchoff*, 786 F.2d at 326. "Because the district court's ruling failed to recognize that contingency fees provide attorneys due consideration for the risk they undertake, it reduced counsel's fee to a level that few attorneys would have accepted at the outset of litigation, when success was by no means assured and the size of any settlement or judgment was unpredictable." *Abrams*, 605 F.3d at 246. *See also* Rao Decl., ¶ 26-31, 35-36.

>   **2.    Class Counsel's requested 1/3 fee is reasonable and comparable to other awards in the Fourth Circuit.**

Class Counsel seeks 33% of the total settlement fund amount of $15,000,000.00 as their fee in this case. This roughly one-third percentage is in line with fee awards in common-fund class action settlements in the Fourth Circuit. *See, e.g.*, *Kidrick v. ABC Television & Appliance Rental, Inc.,* No. 97-cv-0069, 1999 U.S. Dist. LEXIS 23693, 1999 WL 1027050, at *2 (N.D. W.Va. May 12, 1999)(noting that awards of 30%, 35%, and even 50% have been held reasonable); *In re Allura Fiber Cement Siding Litig.*, 2:19-mn-02886-DCN, 2021 U.S. Dist. LEXIS 96931, 2021 WL 2043531, at *4 (courts in the Fourth Circuit have held that 1/3 of the settlement fund for attorneys' fees is reasonable). *See also* Newberg on Class Actions § 15:73 (5th Ed.). One study found that courts consistently award between 30% and 33% of the common fund. Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in Class Action Settlements: An Empirical Study, 1 J. of Empirical Legal Studies, 27, 31, 33 (2004). S*ee also e.g., Chrismon v. Pizza*, No. 5:19-cv-155-BO, 2020 U.S. Dist. LEXIS 119873,  2020 WL 3790866 *5 (E.D.N.C. July 7, 2020) (same and

collecting cases);  *Anselmo v. West Paces Hotel Group, LLC,* No. 9:09-cv-02466, 2012 U.S. Dist. LEXIS 164618, 2012 WL 5868887, at *3 (D.S.C. November 19, 2012)(approximate 33% for fees was reasonable); *Kelly v. Johns Hopkins Univ.*, No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772, 2020 WL 434473 at *3 (D. Md. Jan. 28, 2020) ("Contingent fees of up to one-third are common in this circuit.") (collecting cases);  *Savani,* 121 F. Supp. 3d at 576 ("[A]n award of attorney's fees of 39.57% from the Subclass recovery is fair and reasonable given the results, risks, difficulty, complexity and magnitude of the litigation, and the highly specialized expertise, time and substantial resources required to prosecute it successfully.")

    **3.**    **Class Counsel's requested 33% fee should be awarded because they have met the standard for awarding fees as a percentage of recovery in the Fourth Circuit.**

    Courts in the Fourth Circuit analyze seven factors when awarding fees as a percentage of recovery:  (1) the results obtained for the Class; (2) objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases.  *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 261 (E.D. Va. 2009)(citing cases).  Application of these standards in this case confirms that Class Counsel's requested fees are reasonable and appropriate.

    **(1)**    **The settlement Class Counsel negotiated achieves an outstanding and extremely valuable result for the Class.**

    In the Fourth Circuit, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Abrams*, 605 F.3d at 247 (internal quotation marks omitted).  The $15,000,000.00 settlement in this case provides significant monetary and other relief for approximately 7,841 class members.   The class members all will be sent payments automatically, on a per loan basis, without needing to take any action: an automatic cash payment

of $2,500.00 per loan will be sent to Subclass 1 members and an automatic cash payment of $500.00 per loan will be sent to Subclass 2 Members. Bartholow Decl., ¶ 3. Any individual class member can assert an additional claim for any additional damages proximately caused by Wells Fargo placing their loan into forbearance. *Id.* To the extent funds are remaining after distribution from the Claims Fund of the allowed claims, the Settlement Administrator will make a second automatic distribution, on a per loan basis, in equal amounts, to the class members who cashed their initial automatic settlement payment check. *Id.* Class Counsel consider this settlement an extremely successful and beneficial result for the class members. Because this settlement provides both meaningful automatic cash payments and an additional opportunity by filing a claim for class members to obtain further relief, tailored to the class members' personal harms. *Id.*; Kellett Decl., ¶ 5; Rao Decl., ¶ 31-34.

The settlement also provides many debtors and former debtors with benefits that they would otherwise have been unlikely to obtain. Kellett Decl., ¶ 5. The value of the benefits class members will receive under this settlement is enhanced by the fact that the initial benefits will be provided promptly, without the delay, burden, and risks of further litigation. Bartholow Decl., ¶ 3; Kellett Decl., ¶ 5. This factor is especially important in this case, as the class members are in dynamic situations. Many are still in Chapter 13 bankruptcies, and most are still paying on their mortgage loans. *Id.*

### (2) Class members may object to the fees requested by Class Counsel.

Class members' objections and opt outs are not due until September 9, 2024, and Plaintiffs' motion for final approval is not due until September 11, 2024. Plaintiffs will address any objections, and file any additional materials in support of their final-approval and fee motions thereafter and prior to the hearing on final approval currently set for October 11, 2024.

### (3)    The quality, skill, and efficiency of the attorneys involved.

Class Counsel include experienced, highly-regarded, and nationally-recognized attorneys, including attorneys at Kellett & Bartholow PLLC who have litigated contested class certification evidentiary hearings and a certified class action to judgment on behalf of consumer Chapter 13 bankruptcy debtors.  In particular, Class Counsel's individual and class action cases frequently involve allegations that creditors violated Chapter 13 debtors' rights under the Bankruptcy Code and related consumer-protection laws.  Few, if any, currently practicing attorneys have comparable experience and success representing consumer bankruptcy debtors as class plaintiffs in this unique and complex context.  *See* Rao Decl., ¶ 26-28;  Bartholow Decl., ¶ 76-90; Kellett Decl., ¶ 21-23.[11]

Moreover, "[a]dditional skill is required when the opponent is a sophisticated corporation with sophisticated counsel."  *Smith v. Krispy Kreme Doughnut Corp.,* No. 1:05CV00187, 2007 U.S. Dist. LEXIS 2392, 2007 WL 119157, at * 2 (M.D.N.C. Jan. 10, 2007).  Wells Fargo is the fourth largest bank in the U.S., with over $1.959 trillion in assets.  Kellett Decl., ¶ 13.[12]  Class Counsel litigated against experienced counsel at Troutman Pepper Hamilton Sanders LLP., a huge,

---

[11] Debtors in bankruptcy with bankruptcy counsel generally cannot, by definition, afford to hire and pay counsel to prosecute a case like this, which involves complex legal and factual issues.  *See Jones v. Wells Fargo Home Mortgage (In re Jones)*, Adv. No. 06-1093, 2012 U.S. Bankr. LEXIS 1450, 2012 WL 1155715, at * 1-2, 6-10 (Bankr. E.D. La. Apr. 5, 2012)(slip opinion), aff'd, *Jones v. Wells Fargo Home Mortgage (In re Jones),* 489 B.R. 645 (E.D. La. 2013)(discussing resources of chapter 13 debtors and awarding attorneys' fees). See *Brown v. Goldman Sachs Bank, USA*, Adversary Proceeding No. 24-07009, in the United States Bankruptcy Court for the Western District of Virginia, at ECF 23 ("The vast majority of debtors coming in the bankruptcy courts, especially consumer debtors like the ones here, have very limited resources. The Court sees it nearly every day."); *See* Kellett Decl., ¶ 22-23.  Moreover, most debtors' bankruptcy attorneys simply do not have the expertise and cannot afford either the time or expense of such complex litigation *See* Kellett Decl., ¶ 22.  *See* Rao Decl., ¶ 26-28, 31, 35-36.  *See Lopez v. Portfolio Recovery Associates, LLC (In re Lopez)*, 576 B.R. 84, 97-100 (Bankr. S.D. Tex. 2017).  Law firms will not bring these cases due to the substantial risks involved, and those that do usually fail due to the risks and obstacles inherent in a case of this type.  *See* Kellett Decl., ¶ 22-23; Rao Decl., ¶26-28, 30-31, 35-36.  Kellett & Bartholow is one of the few firms in the country to bring and successfully litigate class actions on behalf of borrowers in or formerly in a Chapter 13 bankruptcy proceeding. *See id.*  Kellett Decl., ¶ 6-7, 22-23.

[12] *See* https://www.bankrate.com/banking/biggest-banks-in-america.

well-respected, law firm.[13]  The Plaintiffs, on the other hand, were represented by one small, four-lawyer firm with two other of-counsel attorneys, a solo practitioner, and a small consumer bankruptcy law firm.[14]

### (4)    This case was complex and has lasted over 4 years.

This litigation was complex and hard fought.  The extensive motion practice, discovery, and the lengthy settlement mediations and negotiations are set out *supra* at length in Mr. Bartholow's, Ms. Kellett's, and Mr. Rao's declarations.

The issues in this case also were novel and complex, which added substantially to Class Counsel's risk in undertaking this litigation.  The Coronavirus Aid, Relief, and Economic Security (CARES) Act was fresh off the books when Defendants implemented their COVID forbearance program.  Class Counsel filed the Harlow adversary proceeding as the very first class action lawsuit in the country seeking to stop Wells Fargo's COVID forbearance actions and seeking redress for the damages caused by Wells Fargo unilaterally placing borrowers into forbearance without their request or informed consent.  Because this was a new law and unprecedented conduct by a mortgage servicer, the financial motivation of Wells Fargo was largely unseen and unknown to the general public.  As a result, this lawsuit was completely novel, requiring a significant degree of research and creativity to develop the factual allegations and theories of legal liability asserted in the class complaint.  Kellett Decl., ¶ 10.

In addition, Bankruptcy Rule 3002.1 itself was enacted December 1, 2011, and has been

---

[13] Troutman Pepper employs over 1,300 lawyers in 22 cities in the United States.  Sullivan & Cromwell, LLP, brought in to additionally represent Wells Fargo in 2023, employs over 880 lawyers in 13 cities in the U.S., Europe, Australia and Asia.  Kellett Decl., ¶ 13.

[14] Ms. Wells left the firm as of July 14, 2023, but the firm added Ms. Parry on October 23, 2023, so Kellett & Bartholow has maintained an office of four attorneys.  O. Max Gardner and Matt McKee were of-counsel to Kellett $ Bartholow for part of the Harlow litigation.

amended and modified several times since then.  Fed. R. Bankr. P. 3002.1 Advisory Committee

Notes. Kellett Decl., ¶ 11. While Class Counsel has brought numerous individual cases involving

Fed. R. Bankr. P. 3002.1, Class Counsel has only brought one other class case based on violations

of Bankruptcy Rule 3002.1—the *Cotton* case, in which the United States District Court for the

Western District of North Carolina entered a final order certifying the nationwide settlement class

and approving the settlement.  *Cotton et al. v. Wells Fargo Bank, N.A., et al., supra,* Docket No.

23. To Class Counsel's knowledge, no other attorneys have brought a successful nationwide class

action based on violation of rule 3002.1.  Kellett Decl., ¶ 6-7.

> **(5)     Class Counsel took significant risks and overcame major obstacles to prosecute and settle the class members' claims in this case.**

Courts have recognized that an attorney's risk is a "foremost factor" in determining an

appropriate fee award.  *Abrams*, 605 F.3d at 246-47 (holding that district court's failure to consider

substantial risks when awarding fee was error); *Mills Corp.,* 265 F.R.D. at 263. *Goldberger v.

Integrated Res., Inc.*, 209 F.3d 43, 54 (2d Cir. 2000); *In re Pinto v. Princess Cruise Lines, Ltd.*,

513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007)(surveying cases); *Ressler v. Jacobson,* 149 F.R.D.

651, 656-57 (M.D. Fla. 1992)("Numerous cases recognize that the attorney's contingent fee risk is

an important factor in determining the fee award.... In evaluating [the contingent fee] factor the

court will not ignore the pecuniary loss suffered by plaintiff's counsel in other actions where

counsel receive little or no fee.").

Throughout this litigation, Wells Fargo's position has been that, as a mortgage servicer, it

had the right to unilaterally forbear or pause mortgage payments from customers.  It also argued

that the vast majority of class members "wanted," and "used" the forbearances that Wells Fargo

imposed, and that Plaintiffs failed to identify any damages caused by the forbearances other than

the Plaintiffs' attorneys' fees. As such, Wells Fargo argued that the class members were entitled to recover nothing in this litigation. Kellett Decl., ¶ 14.

Plaintiffs faced significant additional litigation risk if the case did not settle, as the litigation could go on for years. Moreover, Wells Fargo asserts it would win the case on summary judgment, so the parties would have to litigate that motion. Wells Fargo would also strenuously contest class certification, and it is a significant challenge to certify a class action over a defendant's objection. Even if Plaintiffs' survived summary judgment, and the Court certified the class over Wells Fargo's objections, Wells Fargo would likely seek a direct appeal of class certification to the Fourth Circuit pursuant to Fed. R. Bankr. P. 7023(f). On appeal of any class certification order, Wells Fargo would, among other issues, challenge the bankruptcy court's ruling that it can preside over a nationwide class action, an issue where court opinions across the nation are divided.[15] Rao Decl., ¶ 31; Kellett Decl., ¶ 8-9, 12, 14-18. Wells Fargo would also argue that the Court should not have certified the class because allegedly there are individual issues of liability based on Wells Fargo's claim that some Class Members "asked for" or "wanted" the forbearance, and that class members' damages would therefore have to be tried individually, making a class action unmanageable, and therefore not certifiable. Finally, on the merits, although Plaintiffs' prevailed so far, courts are split regarding the scope of a bankruptcy court's authority to impose sanctions for violations of Fed. Bankr. R. 3002.1. *See* Kellett Decl., ¶ 17-18; Rao Decl., ¶ 30. Plaintiffs deny that any of Wells Fargo's arguments would defeat class certification or support judgment for Wells Fargo on the merits, but Plaintiffs' Counsel nevertheless acknowledge the substantial uncertainty that further litigation would present, absent this settlement. For Class Counsel and

---

[15] *Harlow, et al., v. Wells Fargo & Co., et al*., Adv. P. No. 20-07028, 2022, Bankr. LEXIS 3512, 2022 WL 17586716, 3 (Bankr. W.D. Va. Dec. 12, 2022).

class members alike, the risk of non-payment was very real. *See* Kellett Decl., ¶ 6-20; Rao Decl., ¶ 26, 30-31, 35-37.  These risks and obstacles support Class Counsel's fee request.

> **(6)    The requested fee of 33% of the recovery is reasonable in light of fees awarded in comparable cases.**

As noted *supra*, the percentage-of-recovery method is the "preferred" approach in the Fourth Circuit, and it is consistent with class action fee awards.  In particular, in the *Cotton* case brought against Wells Fargo in the Western District of North Carolina with respect to different conduct by Wells Fargo that also allegedly violated Fed. R. Bankr. 3002.1, the Court awarded 1/3 of the common fund for attorneys' fees, plus the expenses requested.  *Cotton et al. v. Wells Fargo Bank, N.A., et al., supra,* Docket No. 23.

> **(7)    The fee award sought is supported by public policy.**

The public policies in favor of granting a percentage of recovery to Class Counsel are discussed at length, *supra*.

> **4.  Class Counsel's requested fee is supported by a lodestar cross-check.**

Given that courts in the Fourth Circuit approve of the percentage-of-fund method for awarding fees in common fund cases, "[i]t is not necessary for the Court to conduct a lodestar analysis[.]" *Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 U.S. Dist. LEXIS 193107, 2016 WL 6769066, at *4 (M.D.N.C. Sept. 29, 2016)(quoting *Krispy Kreme*, 2007 WL 119157, at *3).[16]

---

[16] A lodestar crosscheck is not required and is, in some respects, problematic from a policy standpoint because it reintroduces the same bad policy and perverse incentives that the increasingly popular percentage-of-recovery method otherwise eliminates.  As the Fourth Circuit noted in *Abrams*, "Fixing a lodestar fee in this contingency case was error and threatens to nullify the considerable advantages of contingency arrangements."  *Abrams,* 605 F.3d at 245.  If Class Counsel believe that courts will limit their fee to some multiple of their lodestar, then they will have the same imperfect incentives they would if courts used the lodestar method alone: to be inefficient, perform unnecessary projects, delay results, and overbill and overstaff work in order to run up their lodestar.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n. 5 (9th Cir. 2002)("The lodestar method is merely a cross- check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee…").  The lodestar crosscheck also caps the amount of compensation Class Counsel can receive, thereby misaligning their incentives from those of class, and

"The lodestar method calculates reasonable fees 'by multiplying the number of reasonable hours expended time a reasonable rate.'" *McAdams*, 26 F.4[th] at 162. Courts look at the *Gunter* factors[17] or the *Johnson* factors[18] or both. *See, e.g. Haney v. Genworth Life Ins. Co.,* 3:22cv55, 2023 U.S. Dist. LEXIS 114524, 2023 WL 2317435, at *11 (E.D. Va. June 28, 2022). The *Gunter* factors are the same as the *Mills Corp.* factors except the seventh factor is "the amount of time devoted to the case by plaintiffs' counsel," which is set out below. The extensive work performed is discussed supra and at length in the declarations of Mr. Bartholow, Ms. Kellett, Ms. Giles, Mr. Limon, and Mr. Rao. *See* Exhibits 1, 2 and 5. The *Johnson* factors also were discussed at length *supra* and in the supporting declarations, except factors (7), (10) and (11). As to (7) - time

---

reducing their rational incentive to achieve the largest possible award for the class.

[17] The *Gunter* factors are: (1) the results obtained for the class; (2) objections; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the case; (5) the risk of nonpayment; (6) awards in similar cases; (7) the amount of time devoted to the case by plaintiffs' counsel. *Gunter v. Ridgewood Energy Corp*., 223 F.3d 190, 195 n.1 (3d Cir. 2000). As with the *Johnson* factors, not all factors are equally weighted in every case. *See In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 735 (3d Cir. 2001).

[18] The *Johnson* factors are (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for legal work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation[,] and ability of the attorney; the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *See Barber v. Kimbrell's*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).

However, "[t]he lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Doe v. Kidd*, 656 Fed. Appx. 643, 657 n.5 (4th Cir. 2016)(citing *Black v. SettlePou, P.C.*, 72 F.3d 492, 502 (5th Cir. 2013)*.* And, as noted in *Perdue v. Kenny A.,* 559 U.S. 542 (2010), "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Perdue*, 559 U.S. at 553. Three of the *Johnson* factors, 1 - complexity of the issues, 8 - results obtained, and 4 - preclusion of other employment, are presumably fully reflected and subsumed in the lodestar amount. *Heidtman v. County of El Paso,* 171 F.3d 1038, 1043 (5th Cir. 1999) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986); *Shipes v. Trinity Industries,* 987 F.2d 311, 319–22 & n. 9 (5th Cir. 1993). Moreover, after *Johnson* was decided, the "Supreme Court has barred any use of the sixth factor," whether the fee is fixed or contingent. *Walker v. U.S. Dep't of Housing & Urban Dev.,* 99 F.3d 761, 772 (5th Cir.1996) (citing *City of Burlington,* 505 U.S. at 567; *Shipes,* 987 F.2d at 323). The Supreme Court has also noted that "the quality of an attorney's performance generally should not be used to adjust the lodestar because considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate." *Perdue*, 559 U.S. at 553. Thus, it would seem that the lodestar subsumes factors 3 and 9.

limitations imposed by the client or circumstances - the withdrawal of the reference and consolidation with *Forsburg*, which was initiated by Wells Fargo, kept the case in the district court for a year and a half while the parties pursued mediation, which was ultimately unsuccessful. As to the undesirability of the case, factor (10), counsel and Mr. Rao have described in their declarations how difficult, arduous and extremely risky these types of class actions are and are thus undesirable. As noted, Class Counsel are not aware of any other attorney in the country who brings these types of class action lawsuits. Finally, the named plaintiffs have been Class Counsel's clients since June of 2020, more than four years..

When using lodestar method as a "cross-check," for a common fund fee award the Court needs not apply the "exhaustive scrutiny" typically mandated for fee applications, and the Court may accept the time estimates provided by lead counsel. *Mills*, 265 F.R.D. at 264.

Multiplying Class Counsel's reasonable hours (after exercise of billing judgment) by its hourly rates yields a total lodestar of $ 1,890,600.00 for time spent through the dates for each firm as set out in the declarations. [19] The following summarizes Class Counsel's work in this case:

| Timekeeper | Hours | Rates | Total |
|---|---|---|---|
| Karen Kellett | 1006.0 | $500 per hour | $503,000.00 |
| Thad Bartholow | 1856.50 | $400 per hour | $742,600.00 |
| Caitlyn Wells | 444.20 | $300 per hour | $133,260.00 |
| Claude Smith | 197.1 | $350 per hour | $68,985.00 |
| Megan Parry | 38.2 | $250 per hour | $9,550.00 |

[19] Class Counsel has voluminous time records documenting their time in this litigation. At the court's request, Class Counsel will provide its records for *in camera* review.

| Randi Daun (paraprofessional) | 123.6 | $100 per hour | $12,300.00 |
|---|---|---|---|
| O. Max Gardner | 136.5 | $500 per hour | $68,250.00 |
| Malissa Giles | 568.3 | $400 per hour | $227,320.00 |
| Tracy Giles | 90.8 | $400 per hour | $36,320.00 |
| Abe Limon | 273.8 | $325 per hour | $88,985.00 |
| Total | 4727.4 | | $1,890,600.00 |

*See* Bartholow Decl, ¶ 8-10, 12; Giles Decl, ¶6; Limon Decl, ¶ 5.  Kellett & Bartholow's hourly rates in this case are substantially below market and thus reasonable and have been approved in several cases in various jurisdictions in Dallas, Texas and across the country.  *See* Bartholow Decl., ¶ 11.  Judge Black recently approved Mr. Bartholow's and Ms. Kellett's rates at $650 and $750 per hour, respectively.[20]

Each of the above billing rates is within the range of reasonable rates approved in the Fourth Circuit. *See, e.g., In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 788 n.33 (E.D. Va. 2001) ($555 per hour for a senior partner was reasonable in 2001); *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 576 (E.D. Va. 2016); *In re Neustar,* 1:14-cv-885(JCC/TRJ), 2015 WL 8484438, at *10 (E.D. Va. 2015) (approving rates of $260–$310 for paralegals, $420–$700 for associates, and $800–$975 for partners); *Hosch v. BAE SystemsInfo. Sols., Inc.*, No. 1:13–CV–00825 (AJT/TCB), 2015 U.S. Dist. LEXIS 181158, 2015 WL 12227738, at *3 n.4 (E.D. Va. Apr. 28, 2015) (rates of up to $650/hour were within range of reasonableness); *Phillips*, 2016 WL 2636289, at *8 (partner rates

---

[20] *See* Docket Nos. 24, 29 and 35 in Case No. 23-70426 in the United States Bankruptcy Court for the Western District of Virginia, styled *In re Rhea Ann Brown*, approving the employment of Kellett & Bartholow, PLLC and Giles & Lambert, P.C. as special counsel representing Ms. Brown in *Rhea Ann Brown and Gregory Kevin Maze v. Goldman Sachs Bank, USA d/b/a Marcus by Goldman Sachs,* Adversary Proceeding No. 24-07009, in the same district.  Mr. Giles and Ms. Giles were also approved at $500 per hour each.

of $640–$880 per hour and associate rates of $375–$550 per hour "within the range of reasonableness[,]" especially given that "the market for class action attorneys is nationwide and populated by very experienced attorneys with excellent credentials"); *Boyd v. Coventry Health Care Inc*., 299 F.R.D. 451, 467 (D. Md. 2014) (accepting as reasonable rates ranging from $325–$700 per hour); *Denton v. PennyMac Loan Servs., LLC*, 252 F. Supp. 3d 504, 516 (E.D. Va. 2017) (approving of $475 and $575 for associate and partners, respectively).

Moreover, Class Counsel's rates are below comparable rates in their local market and thus are objectively reasonable as "national rates," because so few attorneys bring these type of class actions. The Fourth Circuit Court of Appeals has recognized that "where it is reasonable to retain attorneys from other communities, ... the rates in those communities may also be considered," particularly "when the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175, 179 (4th Cir. 1994). Courts have held that in similar cases where very few attorneys in the country bring a certain type of litigation, the market rate is a "nationwide market rate." *Kruger*, 2016 WL 6769066 at * 4.

Class Counsel's rates fall well in line with rates approved within the Fourth Circuit. We are not seeking that the Court specifically approve these rates. Rather, counsel's rates for this case permit the Court to calculate a lodestar for purposes of performing a lodestar crosscheck.

Overall, the amount of attorneys' fees requested is reasonable under a lodestar crosscheck. Class Counsel billed at reasonable hourly rates for their skill and experience. Indeed, by billing at their original rates, their rates are low by today's standards. Kellett Decl, ¶ 25-26; Giles Decl, ¶ 6 at n. 2, 3 and 4, and ¶ 9; Limon Decl, ¶ 5 at n. 2 and , and ¶ 6 (discussing counsel's hourly rates today). Class Counsel performed extensive, though reasonable, amounts of labor at all stages in

the litigation and used their billing judgment to eliminate entries for time spent that would not be billed to a client paying on an hourly basis.  A lodestar crosscheck in this case supports Class Counsel's fee request.

If the Court awards Class Counsel a fee of 33% of $15 million common fund in this case, ($4,950,000), the fee amount would represent a lodestar multiplier of 2.62, which is consistent with lodestar multipliers courts have held to be reasonable and necessary to fairly compensate Class Counsel for undertaking the foreseeable risk and delay of cases like this one, particularly where counsel first began work on the issues in this litigation more than 4 years ago.  *See* Manual for Complex Litigation §14.122 at 195-96 (4th ed. 2011) (stating as to common fund cases that "[t]he lodestar figure may be adjusted... to account for several factors including... the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, the risk of nonpayment, and any delay in payment").

Lodestar multipliers between 2 and 4.5, or more, are generally considered reasonable.[21] *See*, *e.g.*, *Deloach v. Philip Morris Cos.,* No. 1:00CV01235, 2003 U.S. Dist. LEXIS 23240, 2003 WL 23094907, at * 11 (M.D.N.C. Dec. 19, 2003) (finding multiplier of 4.45 appropriate to compensate for the "exceptional result" achieved); Newberg on Class Actions, Third §14.03 at 14-4 to 14-5 ("'Courts applying the lodestar approach will often use large multipliers or monetary enhancements of the time/rate (lodestar) calculation in order to reach fee award results comparable to percentage of recovery fees.'"). *See also Kruger*, 2016 WL 6769066 at * 5 (approving a 3.69 multiplier, and citing cases where multipliers of 3.9, between 3.4 – 4.3, 4.45, 4.65, 5.2, 6, 6.96, 5.5

---

[21] *See, e.g., Singleton v. Domino's Pizza, LLC,* 976 F. Supp. 2d 665, 689 (D. Md. 2013); *Goldenberg v, Marriott PLP Corp.,* 33 F. Supp. 2d 434, 439 n.6 (D. Md. 1998)(approving 3.6 multiplier); *In re Cardinal Health Securities Litigation,* 528 F. Supp. 2d 752, 768 (S.D. Oh. 2007) (finding that a lodestar multiplier of 6 was not unreasonable "[g]iven the outstanding settlement in this case and the noticeable skill of counsel.").

and 8.9 had been approved).

Class Counsel anticipates spending a substantial amount of additional time preparing for the final approval hearing and on supporting class settlement administration.  Class Counsel also has certain continuing obligations as Class Counsel after the settlement is approved, including assisting class members with questions and helping class members obtain payment should they encounter any trouble. These ongoing duties will likely require significant future investments of time by Class Counsel, without any additional or independent payment.

**B.    Class Counsel is entitled to reimbursement of their reasonable expenses in the amount of $62,296.36.**

Class Counsel is also entitled to reimbursement of their reasonable expenses.   Class Counsel requests that the Court award them $62,296.36 in the reasonable expenses incurred, which are summarized in the attached declarations. *See* Bartholow Decl., ¶ 6; Giles Decl., ¶ 8; Limon Decl., ¶ 7.  *See generally*,  Agr. § I.9, 37; § IV, § VII.  "[C]osts, if reasonable in nature and amount, may appropriately be reimbursed from the common fund." *In re Microstrategy*, 172 F. Supp. 2d at 791.  *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. In re: Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg*., No. 115MD2627AJTTRJ, 2020 U.S. Dist. LEXIS 181103, 2020 WL 5757504, at *11 (E.D. Va. Sept. 4, 2020), *aff'd sub nom. In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 27 F.4th 291 (4th Cir. 2022).

**5.    The Class Representatives have earned their service awards, which are reasonable and appropriate.**

The class representatives request—and the Defendants do not oppose—a modest service award of $12,500 for each of the five named plaintiffs for their participation in this case and service to the class, which represents only .4 % of the common fund.  In this case, the class representatives

took active roles throughout the litigation, providing documents, meeting with counsel, answering discovery and staying informed about the case.  Bartholow Decl., ¶ 68; Giles Decl., ¶ 18, 20; Limon Decl., ¶ 23.

Importantly, Mr. Harlow and Ms. Fewell agreed to be interviewed by NBC News, and allowed NBC News to write an article on their cases, despite possible reputational harm.  *See* Bartholow Decl., ¶ 68.

Awards to class representatives in the amount requested herein are reasonable and have been considered reasonable by judges in the Fourth Circuit, including by judges in the Western District of Virginia.  *See e.g., Moore v. Blue Ridge Bankshares, Inc*., *et al*., Case No. 3:19-cv-00045 in the United States District Court for the Western District of Virginia, Charlottesville Division, ECF No. 201, entered June 4, 2024 (awarding service award of $17,500.00 paid from $6,000,000.00 common fund).  *See, e.g., All. Ophthalmology, PLLC v. ECL Grp., LLC*, 1:22-cv-296, 2024 U.S. Dist. LEXIS 113914, 2024 WL 3203226, at *17 (M.D.N.C. June 27, 2024) (approving award of $40,000 for named plaintiff); *Haney v. Genworth Life Ins. Co*., 3:22cv55, 2023 U.S. Dist. LEXIS 15589, 2023 WL 1111646, at *9 (E.D. Va. January 30, 2023) (approving $15,000 service award for each of the class representatives, noting participation in the case); *Lorenzo v. Prime Communs., L.P*., 5:12-cv-69-H-KS, 2020 U.S. Dist. LEXIS 20960, 2020 WL 1970042 at *2 (E.D.N.C. January 21, 2020) (awarding $20,000 service award commensurate with class representative's contribution); *Robinson v. Carolina First Bank, N.A*., 7:18-cv-02927-JDA, 2019 U.S. Dist. LEXIS 103831, 2019 WL 2591153, at *17-18 (D.S.C. June 21, 2019) ($15,000 service award approved for class representative based on $450,000 common fund); *Six v. Loancare, LLC*, 5:21-cv-00451, 2022 U.S. Dist. LEXIS 202284, 2022 WL 16747291, at *8 (S.D.W.V. November 7, 2022) (collecting cases) (service award of $15,000 approved supported

by work in the case in addition to promotion of the public interest.)  In addition, an empirical study published in 2006 suggests that the average service award per class representative is about $16,000[.]" 4 Newberg on Class Actions § 11:38 (4th ed.)

Indeed, the purpose of class representative service awards is not to compensate the named plaintiffs for the harm caused by the defendant but, rather, to fairly reward them for the time and effort they invested in the case and spent on behalf of the class. *See Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 807 F.3d 600, 613 (4th Cir. 2015) (instructing that service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.").  the named Plaintiffs earned their proposed service awards through their substantial participation in the case.  The Court should therefore approve the Plaintiffs' request for class representative service awards.

## CONCLUSION

Based on the reasons and authorities set forth above, Plaintiffs request that the Court award Class Counsel's attorneys' fees in the amount of $4,950,000.00, expenses in the amount of $62,296.36, and the class representatives' service awards of $12,500.00 each as set forth herein.

Dated: July 31, 2024.

Respectfully submitted,

*/s/ Malissa L. Giles*
Malissa L. Giles
Tracy Giles
Giles & Lambert, PC
PO Box 2780
Roanoke, VA 24001
Tel: (540) 981-9000
mgiles@gileslambert.com

*/s/ Theodore O. Bartholow, III ("Thad")*

*/s/ Abelardo Limon, Jr.*
Abelardo Limon, Jr.*
Texas State Bar No. 1235770
890 W. Price Road
Brownsville, TX 78520
Tel: (956) 544-7770
Fax: (956) 544-4949

Theodore O. Bartholow III ("Thad")*
Texas State Bar No. 24062602
Karen L. Kellett*
Texas State Bar No. 11199520
KELLETT & BARTHOLOW PLLC
11300 N. Central Expressway, Suite 301
Dallas, TX 75243
Tel.: (214) 696-9000
Fax: (214) 696-9001
thad@kblawtx.com
kkellett@kblawtx.com

*Attorneys for the Plaintiffs*

*Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on the parties listed below via ECF notification and electronic transmission or other method specified on July 31, 2024.

*/s/ Theodore O. Bartholow, III ("Thad")*
Theodore O. Bartholow, III ("Thad")

William C. Mayberry
Troutman Pepper Hamilton Sanders LLP
301 South College Street, Suite 3400
Charlotte, NC 28202
bill.mayberry@troutman.com
John C. Lynch
Troutman Pepper Hamilton Sanders LLP
222 Central Park Ave., Suite 2000
Virginia Beach, VA 23462
john.lynch@troutman.com
Michael E. Hastings, Esq. (VSB No. 36090)
Justin E. Simmons, Esq. (VSB No. 77319)
Woods Rogers PLC
10 South Jefferson Street, Suite 1400
Roanoke, VA 24011
Tel.: (540) 983-7600
Fax: (540) 322-3417
mhastings@woodsrogers.com
jsimmons@woodsrogers.com

Christopher Viapiano
Sullivan & Cromwell LLP
1700 New York Avenue, N.W.,
Suite 700
Washington, D.C. 20006-5215
viapianoc@sullcrom.com

Brendan Cullen
Sullivan & Cromwell LLP
550 Hamilton Avenue Palo Alto, CA 94301-2010
United States
cullenb@sullcrom.com