# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **TROY SHANNON HARLOW** | § | |
| | § | |
| **MARK STEPHEN ESTES** | § | |
| | § | |
| **KIMBERLY PORTER FEWELL,** | § | |
| | § | |
| **BEATRIZ VILLEGAS-RODRIGUEZ** | § | |
| **and** | § | **ADVERSARY NO. 20-07028** |
| **RODOLFO RODRIGUEZ,** | § | |
| **on behalf of themselves and all** | § | **DISTRICT COURT NO. 7:24-cv-00424** |
| **others similarly-situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **WELLS FARGO BANK, N.A.** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS PURSUANT TO FED. R. CIV. P. 23

## Table of Contents

I.    Introduction..............................................................................................................1

II.   Procedural Background ..........................................................................................4

III.  Class Definition .....................................................................................................8

IV.   Terms of Settlement ..............................................................................................9

V.    Summary of Relief Requested.............................................................................13

VI.   The Settlement meets the requirements for Final Approval .................................13

      A.  The Bankruptcy Court granted preliminary approval of the settlement ...............13

      B.  All of the factors for final approval of the settlement are present here, so the Court
          should approve the proposed settlement under Rule 23(e)(2) .............................16

VII.  The Form of Notice and the Notice Plan meet the requirements of Fed. R. Civ. P.
      23 and Constitutional Due Process ...................................................................24

      A.  The Notice Plan complied with Fed. R. Civ. P. 23(c)(2)(B), 23(e)(1)(B), 23(h)(1)
          and (2), and Constitutional due process...............................................................24
      B.  Dissemination of the notice complied with Fed. R. Civ. P. 23(c)(2)(B), 23(e)(1)(B)
          and Constitutional due process .........................................................................26
      C.  Claim Form ..................................................................................................27

VIII. The Court can certify the Settlement Class Pursuant to Fed. R. Civ. P. 23 (a) and
      (b)(3), and confirm the appointment of Class Counsel Pursuant to Fed. R. Civ. P.
      23(g)...............................................................................................................27

      A.  Rule 23(a) Requirements .................................................................................28
      B.  Rule 23(b)(3) Requirements ............................................................................32

IX.   Prayer............................................................................................................35

# Table of Authorities

## Cases

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591, 117 S.Ct. 2231 (1997) ......................................................................... 28, 33

*Berry v. Schulman,*
    807 F.3d 600 (4th Cir. 2015) ......................................................................... 14

*Broussard v. Meineke Disc. Muffler Shops, Inc.,*
    155 F.3d 331 (4th Cir. 1998) ......................................................................... 30

*Brown v. Transurban USA, Inc.,*
    318 F.R.D. 560 (E.D. Va. 2016) ......................................................... 16, 20, 22, 29

*Deiter v. Microsoft Corp.,*
    436 F.3d 461 (4th Cir. 2006) ......................................................................... 29, 30

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ......................................................................... 24

*EQT Prod. Co. v. Adair,*
    764 F.3d 347 (4th Cir. 2014) ......................................................................... 28

*Gould v. Alleco, Inc.,*
    883 F.2d 281 (4th Cir. 1989) ......................................................................... 14

*Gunnells v. Healthplan Servs., Inc.,*
    348 F.3d 417 (4th Cir. 2003) ......................................................................... 32

*Harlow, et al. v. Wells Fargo & Co., et al.,*
    Adv. No. 20-07028, 2022 WL 17586716, 2022 U ............................................. 8, 9, 11

*Herrara v. Charlotte School of Law, LLC,*
    818 Fed. Appx. 165 (4th Cir. 2020) ......................................................................... 20

*In re The Mills Corp. Sec. Lit.*
    265 F.R.D. 246 (E.D. Va. 2009) ......................................................................... 15, 22

*In re Jiffy Lube,*
    927 F.2d 155 (4th Cir. 1951) ......................................................................... 14, 15

*Jones v. Wells Fargo Home Mortgage*
    2012 Bankr. LEXIS 1450 (Bankr. E.D. La. April 5, 2012) ......................................... 34

*Kelly v. Norfolk & W. Ry.,*
    584 F.2d 34 (4th Cir. 1978) ......................................................................... 28

*Kidwell v. Transp. Commc'ns Int'l Union,*
    946 F.2d 283 (4th Cir. 1991) ......................................................................... 29

*Lopez v. Portfolio Recovery Associates, LLC*
(In re Lopez), 576 B.R. 84 (Bankr. S.D. Tex. 2017) ..................................... 34

*Lumber Liquidators Chinese Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.,*
952 F.3d 471 (4th Cir. 2020) ................................................................... 15,16

*McAdams v. Robinson,*
26 F.4th 149 (4th Cir. 2022) ...................................................................... 14

*Ortiz v. Fibreboard,*
527 U.S. 815, 119 S.Ct. 2295, n. 6 (1999) .................................................. 28

*Pitt v. City of Portsmouth, Va.,*
221 F.R.D. 438 (E.D. Va. 2004) ................................................................. 34

*Rodriguez v. Countrywide Home Loans, Inc.,*
(In re Rodriguez), 432 B.R. 671 (Bankr. S.D. Tex. 2010) ........................... 28

*Scott v. Clarke,*
61 F.Supp.3d 569 (W.D. Va. 2014) ............................................................ 28

*Scott v. Clarke:*12-CV-00036,
2016 WL 452164, 2016 U.S. Dist. LEXIS 14192 at *31 (W.D. Va. Feb. 5, 2016) ...................... 15

*Soutter v. Equifax Info. Servs., LLC,*
498 Fed. Appx. 260–65 (4th Cir. 2012) ...................................................... 30

*Stott v. Haworth,*
916 F.2d 134 (4th Cir. 1990) ...................................................................... 29

*Temp. Servs. v. Am. Int'l. Group, Inc.:08-CV-00271-JFA,*
2012 WL 2370523, 2012 U.S. Dist. LEXIS 86474 (D.S.C. June 22, 2012) ................................. 24

*Wal-Mart Stores v. Dukes,*
564 U.S. 338 (2011) .................................................................................... 29

*Williams v. Big Picture Loans, LLC,*
339 F.R.D 46 (E.D. Va. 2021) ..................................................................... 29

**Statutes**

11 U.S.C. § 105 ........................................................................................... 29

11 U.S.C. § 362 ........................................................................................... 29

**Other**

FED. R. CIV. P. 23 ............................................................................... *passim*

## I.    INTRODUCTION

Plaintiffs Troy Shannon Harlow, Mark Stephen Estes, Kimberly Porter Fewell, Beatriz Villegas-Rodriguez and Rodolfo Rodriguez, (together, "Named Plaintiffs") file this brief in support of their motion for final approval of a proposed class action settlement and certification of settlement class (the "Settlement"), reached with Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") (the "Motion").  The terms of the Settlement are set forth in the Settlement Agreement and Release (the "Settlement," "Agreement" or "Agr.") filed as Exhibit 1-A to the Bartholow Declaration ("Bartholow Decl.").[1]

Plaintiffs allege that in early March of 2020, at the beginning of the pandemic, Wells Fargo made a decision to provide mortgage forbearances to certain customers in Chapter 13 bankruptcies that had not explicitly requested a forbearance.[2]  Plaintiffs allege that the CARES Act required an explicit request for forbearance relief by the mortgagor.   Plaintiffs further allege that, for certain Chapter 13 bankruptcy debtors whose loans Wells Fargo placed into forbearance without the borrower's request, Wells Fargo filed notices of forbearance in the individuals' Chapter 13 bankruptcy cases stating incorrectly that customers had requested forbearance or that Wells Fargo had provided the customers with a temporary suspension of their mortgage payments (implying

---

[1] In support of this Motion, Plaintiffs have attached the following declarations: the Theodore O. Bartholow, III ("Thad") Declaration ("Bartholow Decl.") at Exhibit 1, the Malissa L. Giles ("Giles Decl.") at Exhibit 2, the Karen L. Kellett Declaration ("Kellett Decl.") at Exhibit 3, the Abelardo Limon Declaration ("Limon Decl.") at Exhibit 4, the John Rao Declaration ("Rao Decl.") at Exhibit 5, the Declarations of the Named Plaintiffs at composite Exhibit 6, and the Jordan Broker Declaration ("Broker Decl."), at Exhibit 7.  The Declarations of the Named Plaintiffs at composite Exhibit 6 include the Declaration of Troy Shannon Harlow ("Harlow Decl."), the Declaration of Mark Stephen Estes ("Estes Decl."), the Declaration of Kimberly Porter Fewell ("Fewell Decl."), the Declaration of Rodolpho Rodriguez ("R. Rodriguez Decl."), and the Declaration of Beatriz Villegas-Rodriguez ("B. Rodriguez Decl.").

[2] See Harlow, et. al., v. Wells Fargo Bank, N.A. (In re Harlow), AP No. 20-07028 (Bankr. W.D. Va), Dkt. No. 49.  Documents filed in the bankruptcy adversary proceeding will be referred to as "*Harlow*, Dkt. No. x."

borrower's knowledge and acceptance of the forbearance). This proposed class action settlement seeks to provide relief for those Wells Fargo customers who received mortgage forbearances they did not request and/or without their informed consent.

Plaintiffs allege that Wells Fargo's placement of Chapter 13 bankruptcy debtors' mortgage loans into forbearance was inherently harmful to the consumer debtors. Plaintiffs also allege that Wells Fargo's forbearances were tantamount to an involuntary modification of the Chapter 13 debtors' mortgage loans, which interfered with the Chapter 13 bankruptcy process in a variety of ways.

Wells Fargo denies these allegations and all liability and contends that the vast majority of customers who received a mortgage forbearance requested or wanted and used it but has agreed to resolve this class action to avoid the expense, uncertainty and risk of continued litigation. Agr., p. 2.

After nearly four years of litigation, extensive written and oral discovery, extensive contested motion practice, and several mediation sessions, the Parties reached a Settlement that provides significant monetary relief to the proposed class. Plaintiffs secured a $15,000,000.00 *non-reversionary* Settlement Fund, which under this settlement will be used to pay: (1) Automatic Payments to Class Members; (2) Payments for Class Members' specific damages, to the extent they exceed the automatic payment amount; (3) Costs of Settlement Notice and Administration; (4) Service Awards to the Class Representatives; and (5) any Fee and Expense Award for Plaintiffs' Counsel.

The Settlement provides Class Members who do not opt of the Settlement ("Eligible Class Members") with automatic monetary relief in the form of initial distributions of either $2,500 or $500, depending on the Class Member's subclass, (*i.e.*, the initial distribution), as well as an

opportunity to seek additional compensation over and above the automatic initial distribution amount. *Id.* at § IV. The Settlement Administrator will make the initial automatic payments without requiring Class Members to take any action. *Id.* at § IV.B.1 and 2.

The Settlement also provides a claims process through which Eligible Class Members who believe they incurred damages in excess of the initial distribution can request additional compensation. The deadline for submitting a claim is January 7, 2025. Class Members were provided a Claim Form. The Claim Form is also in English and Spanish on the Settlement Website. The Settlement Administrator, with the assistance of a claims ombudsman (as needed), will process, review, and evaluate all submitted Class Members' claims. *Id.* at § IV.B.3.ii. The Settlement Administrator will then pay valid claims in full if possible, or, to the extent the amount of allowed claims exceeds the remainder of the Net Settlement Amount, Eligible Class Members' allowed claims will be paid on a *pro rata* basis. *Id.* at § IV.B.3.i and ii. If it is economically feasible, any residual amount of the Net Settlement Fund after payment of allowed Eligible Class Member claims will be distributed in an equal portion to all Eligible Class Members who cashed their initial distribution checks.[3] If necessary, any remaining Net Settlement Amount will be paid to a *cy pres* recipient approved by the Court. *Id.* at § IV.B.3.vi.

This proposed Settlement is fair, adequate, and reasonable, and satisfies all of the criteria for final approval and certification for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure. Accordingly, Plaintiffs respectfully request an order: (a) certifying the Settlement Class for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (b) approving the proposed Settlement on a final basis; (c) finding that the Settlement Agreement has been negotiated

---

[3] Plaintiffs' counsel thinks it highly likely that there will be residual funds to redistribute. Kellett Decl., ¶34.

in an arm's-length manner, that the Named Plaintiffs and Plaintiffs' Counsel have adequately represented and will adequately represent the class, and that the terms of the Settlement Agreement are fair, reasonable and adequate under Fed. R. Civ. P 23(c) and 23(e)(1) and (2); (d) confirming the appointment of Kellett & Bartholow, PLLC, Giles & Lambert, P.C., and Abelardo Limon as Class Counsel pursuant to Fed. R. Civ. P. 23(g); (e) confirming the appointment of Troy Shannon Harlow, Mark Stephen Estes, Kimberly Porter Fewell, Beatriz Villegas-Rodriguez and Rodolfo Rodriguez as Class Representatives; (f) finding that the Class Notice attached to the Bartholow Decl., Ex. 1-B and 1-C, and the Notice Plan, constituted valid, due and sufficient notice to the Class, constituted the best notice practicable under the circumstances and complies fully with the requirements of Fed. R. Civ. P. 23, and constitutional due process; and (g) all other items set out in the proposed order submitted with this Motion.

As required by the Settlement Agreement at Agr. § II.B, the parties filed a conditional withdrawal of the reference for purposes of obtaining an order from this Court granting final approval of the Settlement at the final fairness hearing. The Court granted the motion to withdraw the reference on July 2, 2024. ECF 5.

## II.    PROCEDURAL BACKGROUND

Wells Fargo's forbearance practices first came to light when Malissa L. Giles, in her capacity at the time as bankruptcy counsel representing Troy Harlow and Mark Estes in their Chapter 13 bankruptcies, noticed that Wells Fargo had filed nine inaccurate forbearance notices in their clients' Chapter 13 bankruptcy cases. *See* Giles Decl., at ¶¶ 13-19. Ms. Giles inquired about the prevalence of this practice with colleagues regionally, statewide and nationally, including through an email list-serve for a nationwide association of consumer bankruptcy attorneys. As a result of this inquiry, Ms. Giles's law firm joined the other attorneys for the plaintiffs in this case,

Abe Limon, Karen Kellett, Thad Bartholow and O. Max Gardner, III, to further investigate Wells Fargo's forbearance policies. Bartholow Decl., ¶¶ 16-19; Giles Decl., ¶¶ 13-31; Limon Decl., ¶¶ 12-15.

Plaintiffs' Counsel spent substantial time investigating Wells Fargo's forbearance practices, including reviewing bankruptcy court dockets around the country, and concluded that Wells Fargo was providing forbearances on many mortgages of Chapter 13 debtors who did not explicitly request them and, in some circumstances, filing documents in bankruptcy courts that falsely represented that the borrowers requested forbearance for their mortgage loan. Bartholow Decl., ¶ 17; Giles Decl., ¶¶13-30; Limon Decl., ¶¶ 6-16. Plaintiffs' counsel vetted potential candidates to serve as class representatives in this case, which resulted in the selection of the named class plaintiffs in this case. Bartholow Decl., ¶¶ 18-19; Giles Decl., ¶¶ 13-19, 28-30; Limon Decl., ¶¶ 6-11, 14. Plaintiffs' counsel prepared the initial *Harlow* class action complaint and filed it on June 26, 2020.  *Harlow*, Dkt. No. 1.  Bartholow Decl., ¶ 20.[4]

On August 6, 2020, Plaintiffs filed a motion for a preliminary injunction, seeking to prohibit Wells Fargo from continuing to place borrowers' loans into forbearances unless the customers first requested forbearance and to bar Wells Fargo from filing inaccurate forbearance notices in borrowers' Chapter 13 bankruptcy cases.- *Harlow*, Dkt. No. 26.  Before responding to

---

[4] Plaintiffs' Counsel's investigation made it clear that Wells Fargo had placed non-bankruptcy borrowers into a forbearance without their request or consent, and so filed a separate class action on behalf of non-bankruptcy borrowers on July 23, 2020, *Forsburg v. Wells Fargo & Co. et al.*, Case No. 5:20cv-00046-MFU, filed in the United States District Court for the Western District of Virginia. Reference to docket items in that case will be referred to as "*Forsburg,* Dkt. No. x."

As a consequence of Plaintiffs' Counsel's efforts to raise awareness of this issue, several class action firms filed similar non-bankruptcy lawsuits against Wells Fargo in California. The California firms quickly joined forces and sought to transfer and consolidate their cases with a case filed in San Francisco, *Delpapa v. Wells Fargo Bank, N.A.*, Case 3:20-cv-06009-JD, originally pending in the United States District Court for the Northern District of California.  Documents filed in that case will be referred to as "*Delpapa*, Dkt. No. x."

the motion, and after extensive negotiations with Plaintiffs' Counsel, Wells Fargo consented to entry of an order by the bankruptcy court restricting filings Wells Fargo could make in bankruptcy courts regarding mortgage forbearances and limiting the circumstances under which Wells Fargo could file motions for relief from stay prior to January 1, 2021, with respect to borrowers whose loans Wells Fargo had placed into forbearance. *Harlow*, Dkt. No. 40; Bartholow Decl., ¶¶ 23-24.

Plaintiffs filed their second amended complaint on November 16, 2020. *Harlow*, Dkt. No. 49, which Wells Fargo moved to dismiss. *Id.* at Dkt. No. 59 and 60. Wells Fargo also moved for withdrawal of the reference. *Id.* at Dkt. No. 53 and 55.[5] Bartholow Decl., ¶ 28. On January 6, 2021, the District Court for the Western District of Virginia withdrew the reference and consolidated *Harlow* with *Forsburg*.[6] *Id.* at ¶ 32.

Meanwhile, at the December 3, 2020 initial case management conference in *Delpapa*, the District Court directed the *Delpapa* parties to mediate. *Id.* at ¶ 29. At that point, the plaintiffs in the *Delpapa* and related California class actions and the consolidated *Forsburg* class action joined forces, began searching for a mediator, and ultimately agreed with Wells Fargo to engage respected JAMS mediator Bob Meyer for mediation dates that ultimately occurred in the summer of 2021. *Id.* at ¶ 29; *Delpapa*, Dkt. No. 79. At Wells Fargo's request, the parties also agreed to a mediation stay in order to obtain pre-mediation discovery and focus on trying to resolve the case at mediation.[7]

---

[5] *See also Harlow, et. al v. Wells Fargo & Co.*, Case No. 7:20-mc-00030-MFU (WDVA), at Dkt. Nos. 1. Plaintiffs opposed Wells Fargo's motion to withdraw the reference. *See id.* at Dkt. Nos. 4, 5.

[6] *See id.* at Dkt. Nos. 11, 12.

[7] *See Forsburg*, Dkt. Nos. 90, 91, 92, 94, 95.

In August of 2020, Plaintiffs' counsel and counsel for Wells Fargo engaged in extensive good faith negotiations regarding the scope and nature of the discovery needed for trial, and for a possible settlement. Bartholow Decl., ¶ 25. The *Harlow* Plaintiffs also served formal discovery on Wells Fargo in January of 2021. *Id*. Moreover, as part of the extensive and hard-fought negotiations regarding the pre-mediation informal discovery for the 2021 mediation, Wells Fargo agreed to provide Plaintiffs with extensive documentation and account-level data regarding the *Harlow* Plaintiffs' bankruptcy claims, as well as substantial documentation and information regarding Wells Fargo's COVID-19 forbearance practices in general. *Id.* at ¶¶ 39-40, 57.

Despite extensive pre-mediation informal discovery and preparation, and three days of mediation in the summer of 2021, the mediated settlement efforts reached an impasse in early September of 2021, and the litigation continued. *Id.* at ¶ 42.

The *Forsburg/Harlow* parties filed extensive briefing in the district court on Defendants' motion to dismiss the *Harlow* Plaintiffs' second amended complaint, and Plaintiffs' motion to transfer the entire case to the Northern District of California, both before and after the December 16, 2021 hearing on those motions. *Id.* at ¶¶ 27, 33-35, 42, 44-45.

On March 30, 2022, the district court denied the motion to transfer and ordered the *Forsburg* plaintiffs to file a third amended complaint. *Forsburg* was effectively deconsolidated from *Harlow* when the district court transferred *Forsburg* to the Northern District of California by order entered on May 13, 2022. *Forsburg,* Dkt. No. 124. Then, on June 21, 2022, the district court granted Wells Fargo's motion to dismiss the *Harlow* plaintiffs' non-bankruptcy claims and referred *Harlow* back to the Bankruptcy Court for a ruling on Wells Fargo's motion to dismiss Plaintiffs' remaining bankruptcy claims. *See Harlow, et al. v. Wells Fargo & Co., et al.*, Case No. 7:22-cv-00267-MFU (WDVA), Dkt. Nos. 12, 13.

Back in Bankruptcy Court, after additional briefing, the Court heard oral arguments on Wells Fargo's motion to dismiss on November 14, 2022. *Harlow,* Dkt. Nos. 73 – 77. Bartholow Decl., ¶ 48-49. On December 12, 2022, the Court granted in part and denied in part Wells Fargo's motion to dismiss, and the litigation continued. *See Harlow, et al. v. Wells Fargo & Co., et al.*, Adv. No. 20-07028, 2022 WL 17586716, 2022 U.S. Bankr. LEXIS 3512 (Bankr. W.D. Va. Dec. 12, 2022).

Plaintiffs responded to Wells Fargo's document production requests and interrogatories, and Plaintiffs' Counsel obtained additional discovery from Wells Fargo. Bartholow Decl., ¶¶ 50, 53-54; Limon Decl., ¶¶ 19-21. In June 2023, Plaintiffs took the depositions of four Wells Fargo employees who had signed the documents that Wells Fargo filed in the named plaintiffs' bankruptcy cases. Around that time, the Parties began discussing and ultimately agreed to mediate the case again in an attempt to settle. Bartholow Decl., ¶ 56. Plaintiffs prepared for the mediation for months, and the parties mediated this case with David Geronemus of JAMS in New York City on November 30, 2023, where the parties agreed in principle to a settlement of this case. *Id.* at ¶ 56-59; Giles Decl., ¶ 41; Limon Decl., ¶¶ 23-24. The parties continued to extensively negotiate a term sheet and ultimately the Settlement Agreement, which the parties signed on March 26, 2024. Bartholow Decl., ¶ 59; Kellett Decl., ¶¶ 30-32.

## III. CLASS DEFINITION

Plaintiffs seek certification for settlement purposes of the following class:

> All persons in the United States who: (a) had a Mortgage serviced by Wells Fargo that was placed into a Forbearance on or between March 1, 2020 and December 31, 2021; and (b) were a debtor or the Co-Borrower of a debtor in a Chapter 13 bankruptcy case on the date that the Mortgage was placed into the Forbearance; and (c) are not Wells Fargo's officers, directors, or employees, Counsel for Wells Fargo, or Class Counsel. Agr. § I.10.

Plaintiffs seek certification for settlement purposes of the following subclasses:

Subclass 1- Members of the Settlement Population (a) who received a Forbearance as a result of a Proactive Wells Fargo Business Decision or Servicing Error, and (b) for whom Wells Fargo filed a Notice of Forbearance in the Chapter 13 bankruptcy case associated with the Forbearance.

"Proactive Wells Fargo Business Decision" means:

**a.** Customers who requested Forbearance on one Mortgage account between March 9, 2020 and April 7, 2020, and were provided a Forbearance on one or more other Mortgage accounts;

**b.** Customers who contacted Wells Fargo by phone between March 9, 2020 and March 31, 2020, expressing COVID-19 impact and who were provided a Forbearance without an express request;

**c.** Customers who had a pending application in the home preservation process as of March 25, 2020 and who were provided a Forbearance without an express request; and

**d.** Customers who filed a document with the bankruptcy court that Wells Fargo interpreted as expressing COVID impact or requesting payment relief between March 18, 2020 and June 8, 2020 and who were provided a Forbearance without an express request.

Agr. § I.46, 57.

"Servicing Error" means that Wells Fargo previously determined that the Forbearance was provided in error. *Id.* at § I.51.

Subclass 2 - Members of the Settlement Population who are not in Subclass 1. *Id.* at § I.59.

## IV. TERMS OF SETTLEMENT

Wells Fargo will pay $15,000,000.00 into a non-reversionary settlement fund for payment for the 7,839 mortgage loan accounts of the Settlement Class Members, payment of settlement administration costs, service awards to the Class Representatives in an amount of up to $12,500 each, Class Counsel's reasonable and actual expenses, and Class Counsels' attorneys' fees in an amount up to 33% of the Settlement Fund. *See generally*, Bartholow Decl., ¶ 63-69; Agr. § I.9,

37; § IV, § VII.

Following final approval of the settlement, the Settlement Administrator will automatically send checks in the amount of $2,500.00 per Mortgage loan to Subclass 1 Members.  Subclass 1 consists generally of Chapter 13 debtors in whose bankruptcy cases Wells Fargo filed a notice of forbearance in the borrowers' bankruptcy cases after Wells Fargo put the borrower's loan into Forbearance without the borrower's express request.  Plaintiffs assert that Wells Fargo's notices of forbearance filed in Subclass 1 Class Members' bankruptcy cases were false, inaccurate and/or misleading and constituted an abuse of the federal bankruptcy system.  *See* Second Amended Complaint at *Harlow* Dkt. No. 49, ¶¶ 71-81, 290-296; Agr. § I.46, 57.  Subclass 1 Class Members are thus receiving the highest amount of automatic compensation under this settlement.

Subclass 2 Members are individuals who had a Mortgage serviced by Wells Fargo that was placed into a Forbearance between March 1, 2020, and December 31, 2021 while the individuals were in a Chapter 13 bankruptcy, but who do not meet the remaining Subclass 1 criteria.  The Settlement Administrator will automatically send a check in the amount of $500 per Mortgage loan to Subclass 2 Members.  Agr. § IV.4.B.2.

The remaining balance of the settlement fund, after payment of the automatic payments to the members of Subclasses 1 and 2, costs of administration, litigation expenses, and attorneys' fees,  will be deposited into a Claims Fund.[8]  Any Class Member who does not opt-out of the settlement may submit a claim for damages that the Class Member asserts were proximately caused by Wells Fargo placing their loan into forbearance.  Agr. § IV.B.3; Agr. § V; Bartholow Decl. Ex. 1-C.  For example, a Class Member who incurred attorneys' fees for objecting to an unauthorized

---

[8] It is estimated that the Claims Fund will be in excess of $3.1 million.  Bartholow Decl., ¶ 65.

forbearance notice, or for defending a motion for relief from stay, or amending a Chapter 13 plan, or opposing a motion to dismiss (or any combination of these potential filings) resulting from the unauthorized forbearance, could seek to recover these fees to the extent not satisfied by their automatic payment as a Subclass 1 or 2 Member pursuant to the settlement.

Plaintiffs' counsel has engaged the Settlement Administrator, Epiq Class Action & Claim Solutions, Inc. ("Epiq"), as well as a claims ombudsman, University of North Carolina at Chapel Hill Law School Professor Kara Bruce, whose scholarship has focused extensively on the use of class actions to remedy consumer abuses in the context of Chapter 13 bankruptcy, to review and evaluate claims submitted by Class Members for payment from the Claims Fund. The Settlement Administrator will be tasked with evaluating Class Member claims that can be calculated mechanically by reference to supporting documentation the Class Member attaches to the claims and/or other objective sources of public information, such as trustee records and court orders. The claims ombudsman will evaluate any Class Member claims that require additional investigation or are more subjective in nature, such as claims for lost equity following foreclosure, medical expenses, lost income, lost business opportunity, credit harm, and mental anguish / emotional distress.  Claims will not be automatically allowed simply because they are filed, and the Settlement Administrator and claims ombudsman will report to Plaintiffs' counsel regarding the results of their claims review and determination process.

In the unlikely event that the total allowed amount of Class Member claims exceeds the amount of the Claims Fund, the allowed claims will be paid on a *pro rata* basis. Agr. § IV.B.3.vi.

To the extent funds are remaining after distribution from the Claims Fund of the allowed claims, the Settlement Administrator will make a second automatic distribution, in equal amounts, to Class Members who cashed their initial automatic settlement payment check.  *Id.* at §

IV.4.B.3.vi. In other words, the remaining balance of the Claims Fund, after payment of all allowed claims, will be divided by the number of initial automatic settlement payment checks that were cashed, and a second automatic payment check equal to the quotient of the remaining Claims Fund divided by the number of initial automatic payment checks cashed will be sent to the Class Members who cashed their initial automatic payment checks.

For Class Members still in a Chapter 13 bankruptcy case, Notice was sent to that Class Member's Chapter 13 Trustee and bankruptcy attorney. ECF 8-2. ¶ 8; Broker Decl., ¶¶ 4-8.  In addition, the Settlement Administrator performed skip tracing to obtain Class Members' current addresses when Notices were returned as undeliverable and will perform skip tracing to obtain Class Members' current addresses if checks are returned as undeliverable.  Agr. § II.C; § VI.A.9; Broker Decl., ¶ 8.

Class Members had the opportunity to opt-out of the Settlement by September 9, 2024. Fed R. Civ. P. 23(c)(2)(B)(v).  Agr. § VIII.C; Bartholow Decl., Ex. 1.B (Notice) p. 5, Part 10.  As of September 9, 2024, only 2 Class Member(s) have opted out.  *See* Broker Decl., ¶ 18.

Class Members were given the opportunity to object to any part of the Settlement, pursuant to Fed. R. Civ. P. 23(e)(5), by September 9, 2024.  Agr. § VIII.D; Bartholow Decl., Ex. 1-B (Notice) pp. 6-7, Part 16.  As of September 9, 2024, no objections had been filed.[9]  Broker Decl., ¶ 20; Kellett Decl., ¶ 39.

---

[9] Any objection by a class member had to be filed by September 9, 2024, and any opt-out by a class member must have been postmarked by September 9, 2024. Agr. § VIII.D; *Harlow* Dkt. No. 126, p. 21.  The deadline for Plaintiffs to file their motion for final approval is September 11, 2024.  *Harlow* Dkt. No. 126, at ¶¶ 7, 17.  As such, it is possible that a class member timely mailed an opt-out or objection, but that objection may not yet have been received by the Settlement Administrator, or by the clerk and placed on the docket.  After sufficient time for mail delivery, Plaintiffs will file a supplement to the motion to inform the Court of any other timely opt-outs or any timely objections.

Class Members were given the opportunity to object to the application by Class Counsel for a Fee and Expense Award and requests for Service Awards for the Class Representatives by September 9, 2024.  Fed. R. Civ. P. 23(h)(2).  Agr. § VIII.D; Bartholow Decl., Ex. 1-B (Notice) pp. 6-7, Parts 14-16.  As of September 10, 2024, no objections to requested attorneys' fees or expenses have been filed.  Broker Decl., ¶ 20.

Wells Fargo will receive a limited release under this settlement with respect to the Class Members. Agr. § III.

## V.  SUMMARY OF RELIEF REQUESTED

By this Motion, Plaintiffs ask the Court to enter an order approving the class settlement on a final basis.  Plaintiffs assert that this action is maintainable as a class action and that the settlement is fair, reasonable and in the best interests of the class which will be affected by it.

## VI.    THE SETTLEMENT MEETS THE REQUIREMENTS FOR FINAL APPROVAL

### A.    The Bankruptcy Court granted preliminary approval of the settlement.

The Bankruptcy Court held a hearing on preliminary approval of the settlement on May 22, 2024, after Plaintiffs' Counsel submitted extensive materials in support, including briefing on the requirements of final class certification and final approval of the settlement, and numerous declarations in support. *See Harlow*, Dkt. No. 115, with supporting declarations attached to same. After a thorough hearing, the Bankruptcy Court issued its order preliminarily approving the settlement on May 22, 2024, and setting out the procedures for notice and other matters. *See Harlow*, Dkt. No. 126.   This Court entered an order amending the preliminary approval order on August 9, 2024.  ECF 9.

In connection with the Preliminary Approval Order, the Bankruptcy Court directed Plaintiffs to send notice of a settlement to all Class Members who would be bound by the

settlement. The Bankruptcy Court found that giving notice is justified because the parties had established that this Court will be able to: (i) approve the proposal under Rule 23(e)(2); and, (ii) certify the class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B).[10]  As such, the Bankruptcy Court has already found that the Settlement meets the standards for final approval under Fed. R. Civ. P. 23.

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *McAdams v. Robinson*, 26 F.4th 149, 159 (4th Cir. 2022); *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (citing *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)). This analysis should be performed in a manner that is consistent with the strong judicial policy in favor of settlements, particularly in the class action context.  *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989), *cert. denied*, 493 U.S. 1058, 107 L. Ed. 2d 953, 110 S. Ct. 870 (1990) (the analysis begins with "the unassailable premise that settlements are to be encouraged").

The Fourth Circuit applies a two-part test to determine whether a proposed settlement conforms to the requirements of the Federal Rules by considering (1) fairness, which focuses on whether the proposed settlement was negotiated at arm's length; and (2) adequacy, which focuses

---

[10]  The new amendments to Fed. R. Civ. P. 23 took effect on December 1, 2018.  The new standard requires that for preliminary approval, the parties must show that the Court will likely be able to approve the settlement proposal and certify a class for purposes of judgment on the proposal.  *See In re Payment Card Interchange Fee and Merch. Disc. Antirust Litig.*, 330 F.R.D. 11, 28 (E.D. N.Y. 2019) (noting a more exacting standard because courts must assess at the preliminary approval stage whether the parties have shown that the court will likely find that the factors weigh in favor of final settlement approval.)  Plaintiffs apprised the Bankruptcy Court of this higher standard in connection with the preliminary approval motion, and the Bankruptcy Court specifically found that "the District Court is likely to approve the Settlement under Fed. R. Bankr. P. 7023(e)(2) and Fed. R. Civ. P. 23(e)(2) and certify the class for purposes of judgment on the Settlement."  *See Harlow*, Dkt. No. 126, at p. 3, ¶ 4.

on whether the consideration provided to the class members is sufficient. *Scott v. Clarke*, 3:12-CV-00036, 2016 WL 452164, 2016 U.S. Dist. LEXIS 14192 at *31 (W.D. Va. Feb. 5, 2016); *In re The Mills Corp. Sec. Lit. ("The Mills Corp.")*, 265 F.R.D. 246, 254 (E.D. Va. 2009) (citing *Jiffy Lube,* 927 F.2d at 158–59).

### 1.    The fairness standard.

The Fourth Circuit has identified four factors for determining a settlement's fairness, which are: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the settlement negotiations, and (4) counsel's experience in the type of case at issue*. In re: Lumber Liquidators Chinese Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.,* 952 F.3d 471, 484 (4th Cir. 2020); *Jiffy Lube,* 927 F.2d at 158-159. *See* Fed. R. Civ. P. 23(e)(2)(A) and (B).[11] "The fairness analysis is intended primarily to ensure that a settlement is reached as a result of a good-faith bargaining at arm's length, without collusion." *Lumber Liquidators*, 952 F.3d at 484-85 (citations and internal quotation marks omitted).

### 2.    The adequacy standard.

When reviewing the adequacy of a settlement, the court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified." Fed. R. Civ. P. 23(e)(2)(C).

---

[11] After the district court approved the settlement in *Lumber Liquidators*, Fed. R. Civ. P. 23(e)(2) was amended to specify factors for assessing the "fairness, reasonableness, and adequacy" of a class-action settlement. *Lumber Liquidators*, 952 F.3d at 484, n. 8. The Fourth Circuit has continued to apply its multifactor standards when reviewing settlements approved by district courts because those factors almost completely overlap with the new Rule 23(e) factors. *Id.*

The Fourth Circuit has identified five additional factors for assessing a settlement's adequacy:  (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs would likely encounter if the case were to go to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the probability of recovery on a litigated judgment, and (5) the degree of opposition to the proposed settlement.  *Lumber Liquidators*, 952 F.3d at 484.[12]

The entry of an order preliminarily approving class settlement creates a presumption of fairness at the hearing on final approval.  *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 571 (E.D. Va. 2016) ("Settlement proposals enjoy a presumption of fairness afforded by a court's preliminary fairness determination.") (quoting *Berkley v. U.S.*, 59 Fed. Cl. 675, 681 (2004) and collecting cases). Accordingly, the class settlement at issue here is presumptively fair, and all the factors for final approval of settlement are present here.

> **B.**    **All of the factors for final approval of the settlement are present here, so the Court should approve the proposed settlement under Rule 23(e)(2).**

Here, both the fairness and adequacy factors favor final approval of the Settlement.  The benefits provided under the Settlement are rationally related to Plaintiffs' claims and are substantial in light of the risks of prolonged, contested litigation.  *See* Rao Decl. ¶¶ 29-31.  This settlement will provide significant monetary relief to settlement Class Members.  *Id*. at 32-34.  As explained in Section IV, *supra*, payment to the Class Members is automatic under this agreement: the Settlement Administrator will automatically mail settlement checks to the settlement Class

---

[12] Certain of the "adequacy" factors are related and overlap.  The adequacy factors of "(i) costs, risks, and delay of trial and appeal," relate to and overlap with the additional Fourth Circuit factors of "(1) the relative strength of the plaintiffs' case on the merits, (2) any difficulty of proof or strong defenses the plaintiffs would likely incur if the case were to go to trial, (3) the expected duration and expense of additional litigation." *McAdams*, 26 F.4th at 159.

Members who do not opt out, without the necessity of Class Members completing and filing a claim form.  However, if a Class Member believes that Wells Fargo proximately caused damages that exceed the amount of their initial automatic settlement payment, they may file a claim for damages suffered as a result of Wells Fargo placing their loan into forbearance and/or filing a false or misleading notice of forbearance with the bankruptcy court in their bankruptcy case. Class Members who submit valid claims that are allowed by the Settlement Administrator or Claims Ombudsman will receive additional funds from the Claims Fund.  Finally, provided that the Claims Fund is not exhausted after payment of the allowed claims, Class Members who cashed their initial automatic settlement payment will receive a second automatic distribution payment from the Claims Fund per mortgage loan.

**1.   The settlement meets the fairness standard for approval of the settlement because it was the product of hard-fought, good-faith, arm's length negotiations.**

**a.   The posture of the case at the time of settlement favors approval in this case.**

The posture of this case when the parties decided to pursue settlement in 2023 favors the Court finding that the settlement is fair. This settlement has come after substantial contested litigation and is the product of Plaintiffs' Counsel's determined efforts to prosecute Plaintiffs' class claims, in the face of Wells Fargo's strong defense.  Bartholow Decl., ¶¶ 60-62; Rao Decl., ¶¶ 28-31; Kellett Decl. ¶¶ 25, 27-29.

Plaintiffs also promptly obtained an agreed resolution of Plaintiffs' motion for a preliminary injunction with Wells Fargo, which agreed to cease placing borrowers in Chapter 13 bankruptcy into forbearance without an explicit request, on a nationwide basis. *See Harlow*, Dkt. No. 40. Plaintiffs engaged in early mediation efforts, which resulted in an impasse, but nevertheless assisted in developing the parties' understanding of the dynamics and potential

settlement value for this case. Following the unsuccessful early mediation process, the Court dismissed some, but not all, of Plaintiffs' core bankruptcy causes of action, after substantial briefing and extensive oral arguments at both the District Court and Bankruptcy Court levels. Bartholow Decl., ¶¶ 27, 33-35, 44-45, 48-49; Kellett Decl., ¶¶ 27-28.

**b.    Plaintiffs obtained a significant amount of discovery.**

Plaintiffs obtained significant discovery both in connection with the parties' exchange of informal discovery in the spring and summer of 2021 as part of the early mediated settlement process, which involved Wells Fargo's production of voluminous account-level data and extensive documentation regarding its COVID forbearance practices, as well as in formal discovery exchanged after the parties' unsuccessful early mediation efforts. *Id.* at ¶¶ 37-41, 43, 53-54, 56-57. Plaintiffs served formal and informal document production requests on Wells Fargo and exchanged meet and confer correspondence regarding contested discovery issues. *Id.* at ¶¶ 23, 25, 39-40, 43, 53. In response to Plaintiffs' formal discovery requests, Wells Fargo produced and Plaintiffs reviewed more than fifty-seven thousand pages of documents in formal discovery in this case. *Id.* at ¶ 54. Wells Fargo also produced account level data from Wells Fargo's system of record for every Wells Fargo loan in forbearance from March 1, 2020 through December 31, 2021, from which Plaintiffs were able to determine the population of loans of Chapter 13 bankruptcy debtors that are included in this class. *Id.* at ¶¶ 54, 57. Plaintiffs also prepared responses and objections to Wells Fargo's formal discovery (interrogatories and requests for production), and in connection with those responses and Plaintiffs' initial disclosures, Plaintiffs produced hundreds of pages of documents to Wells Fargo. *Id.* at ¶ 50. In June of 2023, Plaintiffs took four depositions of Wells Fargo employees who signed and filed forbearance notice documents on the bankruptcy courts' claims registers or dockets for the named Plaintiffs' Chapter 13 bankruptcy cases. *Id.* at ¶

56. In connection with preparation for the November 2023 mediation in this case, Plaintiffs obtained additional loan-level information from Wells Fargo for the Chapter 13 bankruptcy debtor Class Members. *Id.* at ¶ 57.

Plaintiffs also consulted subject matter experts, engaged in significant research and analysis of industry trade publication information and Wells Fargo's SEC filings, and conducted extensive nationwide sampling of relevant bankruptcy court data regarding Wells Fargo's forbearance practices from the United States Courts' PACER system. *Id.* at ¶¶ 17, 26; Giles Decl., ¶ 28. Furthermore, Plaintiffs' Counsel interviewed and consulted with consumer bankruptcy attorneys from across the country regarding their experiences with Wells Fargo's forbearances, helped educate debtors' lawyers about Wells Fargo's forbearance practices in Chapter 13 bankruptcy cases, and engaged with Chapter 13 trustees regarding their experiences and the administrative issues created by Wells Fargo's filing of inaccurate forbearance notices. Giles Decl., ¶¶ 22-29.

As a result, Plaintiffs' Counsel was appropriately well-informed about the facts, such that counsel was able to properly develop its settlement strategy and evaluate settlement options.

**c.    The settlement was negotiated at arm's length by experienced counsel with the assistance of a reputable mediator.**

In addition to the extensive informal discovery and three-day mediation in the summer of 2021**,** as described *supra*, the parties reached the Settlement Agreement after months of hard-fought negotiations and the assistance of a reputable and highly experienced mediator at JAMS, David Geronemus.[13] Bartholow Decl., ¶ 56. Prior to the mediation, Plaintiffs submitted a detailed confidential settlement demand to Wells Fargo, as well as a mediation statement with extensive

---

[13] David Geronemus, Esq., Mediator with JAMS since 1994. https://www.jamsadr.com/geronemus/.

materials to educate the mediator regarding the complex consumer bankruptcy-specific issues involved in this litigation. *Id.* at ¶ 57. The Parties attended a mediation session with Mr. Geronemus in New York City on November 30, 2023, at which an agreement in principle was reached on the settlement amount, which, after continued negotiations, resulted in an agreed settlement term sheet, and subsequently, the final settlement agreement, executed by the parties on March 26, 2024. *Id.* at ¶¶ 58-59; Kellett Decl., ¶¶ 30-32; Giles Decl., ¶ 41; Limon Decl., ¶ 24; Harlow Decl. ¶ 6. Although the substance of the mediation communications and subsequent settlement negotiations are confidential, the mediation and settlement process has been professional and respectful, yet contested and hard-fought on both sides throughout. Kellett Decl., ¶¶ 29-32.

### d.    Plaintiffs' Counsel has extensive experience in these types of cases.

As illustrated by the declarations of Karen Kellett, Thad Bartholow, Malissa Giles, Abe Limon, and John Rao, Plaintiffs' Counsel's combined experience in complex litigation, consumer class actions and bankruptcy law informed the settlement negotiations and is reflected in the final settlement terms. Bartholow Decl., ¶¶ 2-15, 60; Kellett Decl., ¶¶ 2-22, 26; Giles Decl., ¶¶ 3-9, 23; Limon Decl., ¶¶ 1-4; Rao Decl., ¶¶ 31-34. The benefits to the class, discussed *supra*, are substantial and are rationally related to Plaintiffs' claims for Wells Fargo's alleged continued violations of bankruptcy law. The hard-fought litigation, two separate mediations, the excellent result for the class in spite of the significant procedural and substantive hurdles Plaintiffs faced, and the participation of Mr. Geronemus, an experienced mediator, are all testaments to the non-collusive nature of the settlement. *See Brown v. Transurban USA, Inc.*, 318 F.R.D. at 571-73 (finding final approval warranted in similar circumstances of extensive informal discovery, negotiations through a mediator and experienced class counsel); *Herrara v. Charlotte School of*

*Law, LLC*, 818 Fed. Appx. 165, 177 (4th Cir. 2020) (upholding district court finding that class settlement negotiations were at arm's length because of the use of an experienced class action mediator).

> **2.     The settlement meets the adequacy standard for final approval of the settlement.**

With respect to adequacy, Plaintiffs believe they have a strong case on the merits. However, throughout this litigation, Wells Fargo's position has been that, as a mortgage servicer, it had the unilateral ability to forbear or pause mortgage payments from customers, the vast majority of Class Members "wanted," and "used" the forbearances that Wells Fargo imposed, and Plaintiffs failed to identify any damages caused by the forbearances other than the Plaintiffs' attorneys' fees. As such, Wells Fargo argued that the Class Members were entitled to nothing. *See*, *e.g.* Rao Decl. ¶¶ 29-31, 36; Kellett Decl. ¶ 36. Nevertheless, Plaintiffs were able to negotiate a $15,000,000 monetary settlement, in addition to the early nationwide relief they obtained for Class Members in the resolution of Plaintiffs' motion for a preliminary injunction.

Plaintiffs faced significant additional litigation that could go on for years if the case did not settle. First, the parties would continue to engage in additional discovery, which would be contentious. Wells Fargo asserts it would win the case on summary judgment, so the parties would have to litigate that motion. Wells Fargo would strenuously contest class certification, and it is a significant challenge to certify a class action over a defendant's objection. Even if the Court certified the class over Wells Fargo's objections, it is highly likely that Wells Fargo would seek a direct appeal of any certification to Fourth Circuit pursuant to Fed. R. Civ. P. 23(f), and if allowed, Wells Fargo would, among other issues, challenge the Bankruptcy Court's ruling that a bankruptcy court can preside over a nationwide class action. Wells Fargo would also argue that the Court should not have certified the class because, allegedly, there are individual issues of liability

because Wells Fargo contends that some Class Members "asked for" or "wanted" the forbearance, and because Class Members' damages would have to be tried individually.  Plaintiffs disagree that any of this would defeat class certification or the merits, but Plaintiffs' Counsel can foresee substantial uncertainty in the course of litigation ahead if this settlement is not approved.  *See* Bartholow Decl., ¶¶ 60-62; Kellett Decl., ¶ 36.  *See also* Rao Decl. ¶¶ 29-31, 36.

The case has now been pending for over four years.  Additional litigation likely would cost millions of dollars more in legal fees expenses and take years.[14]

The degree of opposition in this case is non-existent, as no party has filed an objection to the settlement, despite extensive notice to Class Members with detailed instructions on how to file an objection, both on the Notice mailed and emailed to Class Members and on the Settlement Website.  Because no objection to the settlement was made, this factor overwhelmingly supports the allegation that the settlement is fair, reasonable and adequate under Fed. R. Civ. P. 23.  *See Brown v. Transurban USA, Inc.*, 318 F.R.D. at 573-574 (lack of objections to settlement despite extensive notice to class, together with class action website, supported factor which considers opposition to settlement.)  *In re Mills Corp.*, 265 F.R.D. at 257 ("The final *Jiffy Lube* "adequacy" factor looks to the reaction of the Class to the proposed settlement and "[t]he attitude of the members of the Class, as expressed directly or by failure to object, after notice to the settlement is a proper consideration for the trial court."") (quoting *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975)).  "Thus, an absence of objections and a small number of opt-outs weighs significantly in favor of the settlement's adequacy."  *In re Mills Corp.*, 265 F.R.D. at 257 (*citing In re Microstrategy, Inc., Securities Litigation*, 148 F. Supp. 2d 654, 668 (E.D.Va. 2001)).

---

[14] As to the third Fourth Circuit factor, Wells Fargo could pay a judgment if this case went to trial.

The settlement provides many debtors and former debtors with benefits that they would otherwise have been unlikely to obtain. Class Counsel knows that some debtors' attorneys and Chapter 13 Trustees objected to Wells Fargo's notices of forbearance, but those objections are most likely resolved at this point. However, Plaintiffs' counsel does not know of any other adversary proceedings that were filed for individual debtors to address the issues presented in this litigation. Kellett Decl., ¶ 35. While that does not undermine the validity and importance of Plaintiffs' claims, it does reveal the reality that Chapter 13 debtors are especially vulnerable to practices such as those involved in this case, in no small part because few attorneys representing them have the resources and experience necessary to take on Wells Fargo in contested litigation, even (and perhaps, especially) on an individual basis. *See* Rao Decl. ¶¶ 26-28; Kellett Decl., ¶ 35.

The value of the benefits Class Members will receive under this settlement is enhanced by the fact that they are guaranteed automatic payments under this settlement immediately, without the delay, burden and risks of further litigation. This factor is especially important in this case. The Class Members are in dynamic situations. Many still are in Chapter 13 bankruptcies, and most still are paying on their mortgage loans. Delaying payment in exchange for years of extremely risky litigation makes no sense. The settlement achieved now is a far better outcome than the uncertainty of further litigation.

With respect to attorneys' fees, the settlement allows Class Counsel to seek attorneys' fees of up to 33% of the settlement amount, as well as reasonable and actual expenses. Agr. § VII.A. Class Members were apprised that Class Counsel may seek this and were advised in the Class Notice that they may object to Class Counsel's compensation. Bartholow Decl., Exhibit B (Notice) p. 6, Parts 14 -16. Class Counsel's motion for fees and expenses and brief in support were placed on the settlement website after being filed with the Court. Kellett Decl., ¶ 40. The Agreement

provides that payment for any attorney Fee and Expense Award will be made within thirty days of the effective date of the settlement, which is the same deadline for the Settlement Administrator to mail the initial automatic settlement payment checks to Class Members who have not opted out.

Finally, under Fed. R. Bankr. P. 23(e)(3), the only agreements made in connection with the settlement are the term sheet and the settlement agreement. The term sheet is no longer in force now that the settlement agreement has been signed. Agr. § XI.M.

The Court should find that the settlement here is "fair, reasonable and adequate," approve the settlement under Rule 23(e)(2), and certify the Class for purposes of judgment on the proposal. *See* Fed. Bankr. P. 23(e)(1).

## VII. THE FORM OF NOTICE AND THE NOTICE PLAN MEET THE REQUIREMENTS OF FED. R. CIV. P. 23 AND CONSTITUTIONAL DUE PROCESS.

Under Fed. R. Civ. P. 23(c)(2), (e)(1)(B), and (h)(1) and (2), Class Members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court. *Temp. Servs. v. Am. Int'l. Group, Inc*., 3:08-CV-00271-JFA, 2012 WL 2370523, 2012 U.S. Dist. LEXIS 86474, at *28-29 (D.S.C. June 22, 2012) (citing Manual for Complex Litig. (Fourth) § 21.312 (2004)). Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

### A. The Notice Plan complied with Fed. R. Civ. P. 23(c)(2)(B), 23(e)(1)(B), 23(h)(1) and (2), and Constitutional due process.

The Notice authorized by the Bankruptcy Court and sent by Epiq complies with Fed. R. Civ. P. 23(c)(2)(B). *See* Bartholow Decl., Ex. 1-B; Broker Decl. ¶¶ 3–4, 6-15. The Notice was

recreated in a user-friendly format on the Settlement Website.[15]  Broker Decl. ¶¶ 12-14.  The Notice was clear and straightforward, providing putative Class Members with enough information to evaluate whether to participate in the Settlement, as well as directions on how to seek further information.  In particular, the Notice: (a) identified the action that has been settled (subject to Court approval) and the parties to that action;[16] (b) described the Settlement Class and listed the initial automatic settlement payment amount Subclass 1 and Subclass 2 Members will receive under the Settlement;[17] (c) provided a summary of the claims, issues, and defenses in the action, and the terms of the Settlement;[18] (d) stated that a Settlement Class Member may enter an appearance through an attorney or without an attorney if the Class Member so desires;[19] (e) stated that the Court will exclude from the Settlement Class any member who requests exclusion, and the time and manner for requesting exclusion;[20] (f) gave notice of the date and location of the Final Settlement Hearing and the matters that will be considered at the hearing;[21] (g) identified where documents relating to the settlement would be available for review by members by the Settlement Class;[22] (h) stated the binding effect of a judgment on members under Rule 23(c)(3);[23] and (i) informed members of the Settlement Class of their right to object to the Settlement or the granting of any award of fees and expenses to Class Counsel, or any service awards to the Class Representatives, and the procedures for timely presenting their objections to the Court.[24]  Broker

---

[15] https://www.wellsfargobankruptcyforbearanceclass.com/

[16] Bartholow Decl., Ex 1- B (Notice), pp. 1, 3, Part 1; Fed. R. Civ. P. 23(c)(2)(B)(i).

[17] Bartholow Decl., Ex 1- B (Notice), pp. 4-5, Parts 5-7; Fed. R. Civ. P. 23(c)(2)(B)(i)-(iii).

[18] Bartholow Decl., Ex 1- B (Notice), p. 3, Part 2; pp. 4-5, Parts 5-6; Fed. R. Civ. P. 23(c)(2)(B)(i)-(iii).

[19] Bartholow Decl., Ex 1- B (Notice), p. 7, Part 16; Fed. R. Civ. P. 23(c)(2)(B)(iv).

[20] Bartholow Decl., Ex 1- B (Notice), pp. 5-6, Parts 10-12; Fed. R. Civ. P. 23(c)(2)(B)(v) and (vi).

[21] Bartholow Decl., Ex 1- B (Notice), p. 8, Part 19; Fed. R. Civ. P. 23(c)(2)(B)(v) and (vi).

[22] Bartholow Decl., Ex 1- B (Notice), p. 8, Parts 18 and 21; Kellett Decl. ¶ 40.

[23] Bartholow Decl., Ex 1- B (Notice), p. 6, Part 11; p. 8, Part 18; Fed. R. Civ. P. 23(c)(2)(B)(vii).

[24] Bartholow Decl., Ex 1- B (Notice), pp. 6-7, Parts 14-16; Fed. R. Civ. P. 23(e)(5)(A); and (h)(1) and (2).

Decl., ¶ 12-14.

Importantly, the Notice emailed and mailed to Class Members informed them whether they are in Subclass 1 or Subclass 2, so they knew the amount of their initial automatic settlement payment.  Broker Decl., ¶ 7.

### B.    Dissemination of the notice complied with Fed. R. Civ. P. 23(c)(2)(B), 23(e)(1)(B) and Constitutional due process.

The manner of dissemination of the Notice was approved by the Bankruptcy Court under Fed. R. Civ. P. 23(e)(1), which provides that, where a proposed settlement is presented to a court for approval, the "court must direct notice in a reasonable manner to all Class Members who would be bound by the proposal." *Harlow*, Dkt. No. 126; Fed. R. Civ. P. 23(e)(1)(B).  *See also id.* at 23(c)(2)(B).[25]  Wells Fargo previously provided loan level details regarding the Class Members during discovery.  Bartholow Decl., ¶¶ 39, 54, 57.  Wells Fargo provided the Class List, which included the contact information of Class Members as set forth in Wells Fargo's business records, to the Settlement Administrator and Class Counsel, already sorted by subclass.  Agr. § II.C.  *See* ECF 8-2, ¶ 2.  As of July 11, 2024, the Settlement Administrator had emailed each Class Member the information contained in the Notice and Claim Form, if an email address was available. If not, the Settlement Administrator mailed the Notice and Claim Form to those Class Members by U.S. mail. On August 5, 2024, the Settlement Administrator mailed the Notice and Claim Form by first class U.S. mail, postage prepaid, to all Class Members to whom it had previously sent email notices.  Broker Decl., ¶¶ 4-10; Agr. § II.C.; § VI.A.2.  For Class Member who were in bankruptcy

---

[25] At the request of Plaintiffs, this Court entered an order amending the Preliminary Approval Order to allow service of the Notice by email (where available) and by first class mail by August 5, 2024 to each individual on the Class List, and found that this procedure met the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. ECF 9.

at the time that Notice was sent, the Settlement Administrator mailed the Class Member's bankruptcy attorney and Chapter 13 Trustee the Notice by U.S. mail. ECF 8-2, ¶ 8; Broker Decl., ¶¶ 4-8; Agr. § II.C.; § VI.A.3, 4.  The Settlement Administrator obtained current addresses for Class Members, bankruptcy attorneys and Chapter 13 Trustees whose Notice was returned as undeliverable, and mailed the Notice to those Class Members, attorneys and Chapter 13 Trustees at the new addresses. Broker Decl., ¶ 8; Agr. §VI.A.9.

The Settlement Administrator set up and maintains the Settlement Website with information about the settlement and pertinent deadlines, as well as a toll-free number, mail and email address to respond to questions and requests for settlement materials from Class Members. Broker Decl., ¶ 9-16. Agr. § II.C.; § VI.A.16; 17. The Notice and Claim Form mailed to Class Members was also posted on the website in Spanish and English.  Broker Decl., ¶ 12; Agr. § II.C; Limon Decl., ¶ 25.

### C.     Claim Form

The Notice also included the Claim Form. Broker Decl. ¶¶ 4, 12, 14.  *See* Bartholow Decl., Ex. A-3 (Claim Form).  The Claim Form allows Class Members to submit and complete the Claim Form online and by electronic signature and includes a link to the Settlement Website and/or a QR Code or any other appropriate available technology to allow Class Members to submit claims electronically.  Broker Decl., ¶ 14.  Class Members are also able to submit their claims in writing. *Id.*; Agr. § V.A.  Class Members have until January 7, 2025, to submit claims.

### VIII.   THE COURT CAN CERTIFY THE SETTLEMENT CLASS PURSUANT TO FED. R. CIV. P. 23(a) and (b)(3), AND CONFIRM THE APPOINTMENT OF CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g).

In this case, all of the requirements of Fed. R. Civ. P. 23(a) are met, and the class falls within Fed. R. Civ. P. 23(b)(3).  Except for manageability, the requirements for certifying trial

classes and settlement classes are the same. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 620, 117 S.Ct. 2231, 2245, 2248 (1997).

### A.    Rule 23(a) Requirements.

Fed. R. Civ. P. 23(a) imposes four threshold requirements applicable to all class actions. *Ortiz v. Fibreboard*, 527 U.S. 815, 828 n.6, 119 S.Ct. 2295, 2306, n. 6 (1999).

**Numerosity**.  "There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied." *Kelly v. Norfolk & W. Ry.*, 584 F.2d 34, 35 (4th Cir. 1978).  Here, the class is so large that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  The proposed representative need only show that joining all class members "would be extremely difficult or inconvenient." *Scott v. Clarke*, 61 F.Supp.3d 569, 584 (W.D. Va. 2014) (citing generally 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1762 at 176 (3d ed. 2005) (footnote omitted)); *Rodriguez v. Countrywide Home Loans, Inc., (In re Rodriguez)*, 432 B.R. 671, 692 (Bankr. S.D. Tex. 2010) (citing 1 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 3:3 (4th ed. 2002) (the numerosity test helps assure that the two class action objectives of "judicial economy and access to the legal system, particularly for persons with small individual claims" are served).  The Class Members here have 7,839 mortgage loan accounts with Wells Fargo, and thus the Class is sufficiently numerous.

**Commonality**.  There must be questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Under the commonality requirement of Rule 23(a)(2), at least one common question of law or fact must exist among class members.  *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014).  Commonality requires that a proposed class action have "the capacity … to generate answers" that "resolve an issue that is central to the validity of each one of the claims in one

stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011). Minor factual variances will not preclude commonality, so long as the claims arise from the same general set of facts and the class members share the same legal theory. *Brown v. Transurban U.S.A., Inc.*, 318 F.R.D. at 567. *See, e.g.*, *Williams v. Big Picture Loans, LLC*, 339 F.R.D 46, 58 (E.D. Va. 2021) ("[A] class action will not be defeated solely because of some factual variances in individual grievances" as long as the claims "arise from the same isolated set of facts, differences in the extent of each class member's injuries or damages will not prevent a finding that commonality exists." (citing *Jeffreys v. Communs. Workers of Am.*, 212 F.R.D. 320, 322 (E.D. Va. 2003)).

Common issues include, but are not limited to, whether Wells Fargo placed Class Members into forbearances without their request, whether Wells Fargo's forbearance program and the bankruptcy notices it filed in connection with that program violated the laws alleged by Plaintiffs, whether Wells Fargo caused the harmful outcomes alleged by Plaintiffs, whether the Wells Fargo's forbearance program constituted abuse of process and contempt for which the Court can provide relief pursuant to 11 U.S.C. § 105(a), and whether Wells Fargo violated the automatic stay of 11 U.S.C. § 362.

**Typicality**. The Class Representatives have claims that are typical of the class. Fed. R. Civ. P. 23(a)(3). Like the commonality requirement, the test for typicality is not demanding. As for the second and third Rule 23(a) factors, the requirements for typicality and commonality often merge. *Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 305 (4th Cir. 1991); *Stott v. Haworth*, 916 F.2d 134, 143 (4th Cir. 1990). The typicality requirement "allows named parties to represent absent class members when, *inter alia*, the representative parties' claims are *typical* of the claims of every class member." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). For a claim to be typical, "a class representative must be part of the class and possess the same

interest and suffer the same injury as the class members." *Id.*, citing *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). That is, "the named plaintiff's claim and the class claims [must be] so interrelated that the interest of the class members will be fairly and adequately protected in their absence." *Id.*, citing *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. at 157 n. 13. The typicality requirement is "captured by the notion that as goes the claim of the named plaintiff, so go the claims of the class." *Deiter*, 436 F.3d at 466; *Souter v. Equifax Info. Servs., LLC*, 498 Fed. Appx. 260, 264–65 (4th Cir. 2012); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998). Here, the Plaintiffs and Class Members share common questions of law and fact, as noted above.

**Adequacy of Representation**. The Class Representatives have and will fairly represent and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The Class Representatives hold no conflicts of interest with the members of the class they seek to represent, and the Class Representatives' interests are aligned with those of the class. The Class Representatives have participated actively in this litigation, providing information regarding their personal circumstances and bankruptcy filings, providing information to respond to Wells Fargo's discovery requests, and in the case of Troy Harlow, physically attending the November 30, 2023 mediation session in New York City. All of the Class Representatives have accepted and support this settlement after consultation with Plaintiffs' Counsel. *See* Exhibit 6. Harlow Decl., ¶¶ 5 - 7; Fewell Decl., ¶¶ 4 - 6; B. Rodriguez Decl., ¶¶ 4 - 5; R. Rodriguez Decl., ¶¶ 3 - 5.; Estes Decl., ¶¶ 4 - 6.

**Adequacy of Counsel.** In addition to fairly and adequately representing the interests of the class, the Class Representatives have competent counsel that have fairly and adequately represented the class. In appointing class counsel, the Court is to consider the requirements of

Fed. R. Civ. P. 23(g)(1)[26] and may only appoint class counsel if the applicant is adequate under Fed. R. Civ. P. 23(g)(1) and if class counsel will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(2) and (4).

Pursuant to the Preliminary Approval Order, Kellett & Bartholow PLLC, the Limon Law Firm and Giles & Lambert PC were appointed as Class Counsel, and by the instant motion, Plaintiffs' Counsel seek that the Court confirm their appointment as Class Counsel pursuant to Fed. R. Civ. P. 23(g)(1). As set forth in the declarations filed in support of the Motion, such counsel has extensive experience in consumer bankruptcy proceedings, consumer bankruptcy claims of this type, consumer rights litigation and, with respect to Kellett & Bartholow PLLC, extensive experience in bankruptcy class actions involving mortgage servicing-related issues unique to the bankruptcy process. In addition, Plaintiffs' Counsel has extensive experience in complex litigation generally. *See also* Rao Decl., ¶¶ 18-36. As set forth in the declarations, counsel for Plaintiffs have no conflicts of interest with respect to the members of the class. Kellett Decl., ¶ 38, Giles Decl., ¶ 42, Limon Decl., ¶ 26. The named Plaintiffs do not have conflicts of interest with the Class Members they seek to represent. *See* Exhibit 6 (Named Plaintiffs' declarations).

---

[26] (1) **Appointing Class Counsel**. Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court (A) must consider:

(i)     the work counsel has done in identifying or investigating potential claims in the action;
(ii)    counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;
(iii)   counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class;
(iv)    may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
(v)     may direct potential class counsel to provide information on any subject pertinent to the appointment and the proposed terms for attorney fees and nontaxable costs; and
(vi)    may make further orders in connection with the appointment.

Finally, Plaintiffs' Counsel have extensive knowledge of all the legal issues that have arisen in this class action and have vigorously prosecuted this action against Wells Fargo and the resources brought to bear in its defense. *See, e.g.*, Bartholow Decl., generally; Kellett Decl., ¶ 37; Giles Decl., ¶¶ 3-9, 23, 29-41; Limon Decl., ¶¶ 1-4, 14-25, Rao Decl., ¶¶ 28-36. If, for some reason, this settlement is not finally approved by this Court, or if approval is overturned on appeal, Plaintiffs' Counsel will continue to prosecute this case vigorously and have the resources to do so. Kellett Decl., ¶ 37.

After being appointed Class Counsel by order of the Bankruptcy Court, Plaintiffs' Counsel timely filed a motion for an award of attorneys' fees and expenses pursuant to Fed. R. Civ. P. 23(h)(1) and seeks approval of such fees and expenses pursuant to all of the requirements of Fed. R. Civ. P. 23(h). That application is pending before the Court. Docket No. 6-7.

### B.      Rule 23(b)(3) Requirements.

In addition to the requirements of Fed. R. Civ. P. 23(a), a class action must also satisfy the requirements of one of the three categories under Fed. R. Civ. P. 23(b). The Class Representatives seek certification under Fed. R. Civ. P. 23(b)(3). Under Fed. R. Civ. P. 23(b)(3), a class action is permitted if two criteria are met: (1) common questions of law or fact predominate over individual issues, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the case. Fed R. Civ. P. 23(b). In this case, there are common questions regarding liability with respect to Wells Fargo's forbearance program, and its filing of notices of forbearance in the bankruptcy courts, that predominate over individual issues. This is true even if some determination of individual damages would be required. If "common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003)

(citing 5 *Moore's Federal Practice* § 23.23[2] (1997) ("[T]he necessity of making an individualized determination of damages for each class member generally does not defeat commonality.")) Courts have routinely held "that the need for individualized proof of damages alone will *not* defeat class certification." *Id.* at 429 (emphasis in original). *Amchem*, 521 U.S. 591, 615, 117 S.Ct. 2231, 2245-46. Fed. R. Civ. P. 23(b) sets out four non-exhaustive factors for the court to consider when determining whether a case meets these criteria: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-616, 117 S.Ct. at 2246. However, the Court need not consider manageability when the case is being settled. *Id.,* 521 U.S. at 620, 117 S.Ct. at 2248.

Explaining the superiority prong of Rule 23(b)(3), the Supreme Court stated in *Amchem Products, Inc. v. Windsor,* "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" 521 U.S. at 616-17, 117 S.Ct. at 2246 (quoting Kaplan, A Prefatory Note, 10 B.C. Ind. & Com. L. Rev. 497, 497 (1969)). "The policy at the very core of class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc.,* 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997)). Here, the class consists of debtors in or formerly in a chapter 13 bankruptcy proceeding, and thus by definition are likely unable financially to pursue a case like this on an individual basis. The truth is, even debtors in

bankruptcy with bankruptcy counsel cannot afford to prosecute a case like this which involves complex legal and factual issues and years of litigation. *See Jones v. Wells Fargo Home Mortgage (In re Jones)*, 03-16518, 2012 Bankr. LEXIS 1450, at *22-23, 2012 WL 1155715 (Bankr. E.D. La. April 5, 2012) (slip opinion), aff'd, *Jones v. Wells Fargo Home Mortgage (In re Jones)*, 489 B.R. 645) (E.D. La. 2013). *See* Rao Decl., ¶ 26-28, 32.  Moreover, most debtors' bankruptcy attorneys simply do not have the expertise and cannot afford either the time or expense of such complex litigation. Rao Decl., ¶ 26-28, 32; Kellett Decl., ¶ 35.  *See Lopez v. Portfolio Recovery Associates, LLC (In re Lopez)*, 576 B.R. 84, 98-100 (Bankr. S.D. Tex. 2017).

In addition, Plaintiffs' Counsel is not aware of any other pending litigation on the bankruptcy issues raised in this suit. *Pitt v. City of Portsmouth, Va.*, 221 F.R.D. 438, 446 (E.D. Va. 2004) ("[T]he absence of other litigation suggests that this is a negative value suit and, therefore, a class action is the superior method of adjudicating these issues.")  Kellett Decl., ¶ 35.

The third consideration in Rule 23(b)(3) consists of basically two considerations. *Pitt v. City of Portsmouth, Va.*, 221 F.R.D. at 446.  "First, a court must evaluate whether allowing a Rule 23(b)(3) action to proceed will prevent the duplication of effort and the possibility of inconsistent results.... The other consideration ... is whether the forum chosen for the class action represents an appropriate place to settle the controversy." *Id.* (citing 7A Wright & Miller, Federal Practice and Procedure § 1780 (2d ed.)).  While Plaintiffs' Counsel does not know of other adversary proceedings on the issues in this case, certification of the Class and approval of the Settlement would prevent any future duplication of effort.  Roanoke, Virginia, is the proper place to proceed with determining whether the settlement should be approved.  Mr. Harlow lives here, and both Mr. Harlow and Mr. Estes filed their Chapter 13 bankruptcy cases in Roanoke. Wells Fargo does business in Roanoke.

The Court should certify this settlement class pursuant to Fed. R. Bankr. P. 23(a) and (b)(3).

## IX.    PRAYER

WHEREFORE, Plaintiffs request that the Court enter a Final Approval Order:

- Finding that this Court has personal jurisdiction over Plaintiffs and all Class Members and has subject matter jurisdiction to approve the Settlement and the Settlement Agreement.

- Fully and finally certifying, for settlement purposes only, this Action as a class action pursuant to Fed. R. Civ. P. 23.

- Finding that the Class Representatives and their counsel have and will fairly and adequately represent and protect the interests of the Class Members, and confirming the appointment of Plaintiffs' Counsel as Class Counsel and the Named Plaintiffs as Class Representatives.

- Fully and finally approving the Settlement set forth in the Agreement and its terms pursuant to Fed. R. Civ. P. 23(a) and (b)(3), and finding that the Settlement is, in all respects, fair, reasonable and adequate within the meaning of Fed. R. Civ. P. 23, and directing the Agreement's consummation pursuant to its terms and conditions.

- Finding that the Settlement set forth in the Agreement is the result of good faith arm's-length negotiations between experienced counsel representing the interests of the Parties, finding that there is no just reason for delay, and directing the Parties to perform the Settlement's terms.

- Finding that the Class Notice and Claim Form attached as Exhibit 1-B and 1-C to the Bartholow Decl., and the Notice Plan, as amended by Court order, constituted reasonable, due, adequate, and sufficient notice to all Persons entitled to receive notice, and complies in all respects with the requirements of Fed. R. Civ. P. 23, due process, and any other applicable law.

- Granting all such further relief to which Plaintiffs are entitled, including entering the proposed order of final approval submitted with this Motion.

Dated: September 11, 2024

Respectfully submitted,

_/s/ Theodore O. Bartholow, III ("Thad")_
Theodore O. Bartholow III ("Thad")*
Texas State Bar No. 24062602
Karen L. Kellett*

Abelardo Limon, Jr.
Texas State Bar No. 1235770
890 W. Price Road
Brownsville, TX 78520

Texas State Bar No. 11199520
Kellett & Bartholow PLLC
11300 N. Central Expressway, Suite 301
Dallas, TX 75243
Tel.: (214) 696-9000
Fax: (214) 696-9001
thad@kblawtx.com
kkellett@kblawtx.com
*Admitted Pro Hac Vice*

Malissa L. Giles
Tracy A. Giles
Giles & Lambert, PC
PO Box 2780
Roanoke, VA 24001
Tel: (540) 981-9000
mgiles@gileslambert.com

Tel: (956) 544-7770
Fax: (956) 544-4949

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on the parties listed below via ECF notification and/or electronic mail on September 11, 2024.

*/s/ Theodore O. Bartholow, III ("Thad")*
Theodore O. Bartholow, III ("Thad")

William C. Mayberry
Troutman Pepper Hamilton Sanders LLP
301 South College Street, Suite 3400
Charlotte, NC 28202
bill.mayberry@troutman.com

John C. Lynch
Troutman Pepper Hamilton Sanders LLP
222 Central Park Ave., Suite 2000
Virginia Beach, VA 23462
john.lynch@troutman.com

Michael E. Hastings, Esq. (VSB No. 36090)
Justin E. Simmons, Esq. (VSB No. 77319)
Woods Rogers PLC
10 South Jefferson Street, Suite 1400
Roanoke, VA 24011
Tel.: (540) 983-7600
Fax: (540) 322-3417
mhastings@woodsrogers.com
jsimmons@woodsrogers.com

Christopher Viapiano
Sullivan & Cromwell LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006-5215
viapianoc@sullcrom.com

Brendan Cullen
Sullivan & Cromwell LLP
550 Hamilton Avenue
Palo Alto, CA 94301-2010
United States
cullenb@sullcrom.com